Jones, J.
 

 Both of the following cases originated in the Court of Appeals of Stark county and in each case the relators, failing to secure a favorable judgment in the appellate court, filed appeals in this court in which they seek reversals of the judgments of the lower court.
 

 Cause No. 26242 was an action in mandamus brought by the widow of one Elvin C. Mansfield wherein was sought a writ commanding the respondents to place relator’s decedent upon the rolls of the police department of the city of Canton as patrolman during the period between the 9th day of April, 1934, and the 9th day of July, 1934, and for the payment of salary claimed to be earned by the deceased patrolman during such period. The cause was submitted to the appellate court upon the pleadings and an agreed statement of facts. The court, finding on the issues joined in favor of the respondents, ordered a dismissal of relator’s action at her cost.
 

 All of the material allegations in the petition are substantially conceded by the respondents in the agreed statement. Elvin C. Mansfield, the deceased, took a competitive examination for the position of patrolman on June 27, 1929, passed the examination and was placed on the register of those eligible for appointment. On November 19, 1929, he was appointed
 
 *237
 
 to the position of patrolman in the police department in the classified civil service. As snch he served until January 9, 1934, when he received the following communication from the Chief of Police of the city of Canton:
 

 “You are this ninth day of January, 1934, laid off without pay as a member of the police department of the city of Canton, Ohio, as per city ordinance which has reduced the number of officers.
 

 “You will turn in to the chief’s office all equipment which is property of the department. Your temporary lay-off is in accordance.with the civil service law.
 

 “Signed — Chief of Police.”
 

 On April 9, 1934, a vacancy occurred in the department caused by the death of one Ray King, who was also a patrolman. At the time of his separation from the department on January 9, 1934, the relator’s decedent was a regular and permanent employee; and, since he was' the oldest employee in point of service of those laid off, the claim is advanced that under Section 486-17&, General Code, he was entitled not only to fill the vacancy caused by the death of King, but to the emoluments attaching thereto after Kang’s decease. After the death of both King and Mansfield, the Civil Service Commission of the city made a finding that, since Mansfield was .at the head of the eligibility list on April 9,1934, he was ‘ ‘ entitled to be certified to the appointing authority for appointment to such position as patrolman.” The appointing authority, howeyer, refused to reinstate relator’s decedent. The relator’s decedent received no notice from the city that he would not be reinstated or reappointed, and no charges or specifications were served upon him.
 

 The respondents concede all the foregoing conclusions of fact, and rely, by way of avoidance and defense, on the following statement of fact, also agreed to by the parties: “It is further agreed by and between the parties that on April 9, 1934, the said Elvin
 
 *238
 
 C. Mansfield was in such physical condition because of ill health that he could not perform the duties of patrolman. It is further agreed that thereafter, on the ninth day of July, 1934, said Elvin C. Mansfield died at Mercy Hospital'in the city of Canton, Ohio.”
 

 The legal question presented falls within a narrow compass. Counsel for the relator contends' that, under the provisions of Section 486-17&, General Code (114 Ohio Laws, 224), where a police officer has been laid off for the purpose of economy, if a vacancy occur through the death of another member of the police force, the police officer so laid off “is entitled to reinstatement to the position, even though he is physically incapacitated and unable to perform the duties of a patrolman.” He also contends that the officer so laid off is' entitled to the emoluments of the office after his entitled reinstatement, although he was unable to perform any of its duties.
 

 In his answering brief, counsel for the respondents admits that, after King’s death, if Mansfield had been able to perform his duties he would have been entitled to fill the vacancy. He maintains, however, that Mansfield was not entitled to the position of patrolman or to the salary pertaining thereto so long as he “was in such physical condition because of ill health that he 'could not perform the duties of patrolman.” (Finding of fact.) So far as the provisions of Section 486-17&, General Code, are herein germane, they provide that, in reduction of the police force, the youngest employee in point of service shall be first laid off; and that if a position once abolished or made unnecessary be later found necessary to be re-created or reestablished within two years from the date of abolishment, “or should a vacancy occur through death, resignation, or through any other cause within two years from the date of the abolishment of the position or lay-off, the oldest employee in point of service of those laid off
 
 *239
 
 shall he entitled to same providing he was at the date of his separation from the department a regular and permanent .employee.”
 

 The whole of relator’s argument is' based upon that clause of the section which recites that the police officer so laid off “shall be
 
 entitled to same,”
 
 providing that he was a regular and permanent employee at the time of his separation from the department. Had the laid-off officer been physically able to perform his duties after the death of King, the contention of the relator could well have been sustained.
 
 Curtis, Safety Dir.,
 
 v.
 
 State, ex rel. Morgan,
 
 108 Ohio St., 292, 140 N. E., 522, paragraph 3 of the syllabus. But the fallacy in the argument of relator lies' in the implication that the right of an employee to restoration is unqualified and absolute; and that he is legally entitled to restoration and salary irrespective of the fact that he may be physically unable to perform the duties of his position.
 

 The opening clause in the fourth paragraph of the syllabus in the
 
 Curtis ease, supra,
 
 contains the following recital: “The fundamental purpose of civil service laws and rules is to .establish a merit system, whereby selections for appointments in certáin branches of the public service may be made upon the basis of demonstrated relative fitness,” etc. Had his absolute physical incapacity to perform service existed at the time of Mansfield’s lay-off, it would have been not only the right but it would have become the duty of the safety department to lay off the officer and furnish him with a copy of the lay-off order pursuant to Section 486-17&, General Code; and, should it appear at the hearing that the employee was physically incapacitated, he would fail in his effort to be continued in service on the police force.
 

 The keystone of the arch in the structure of our civil service law pertaining to its administration is fitness and
 
 “efficiency.”
 
 This is clearly indicated by the
 
 *240
 
 incorporation of the following cogent provisions in onr civil service code:
 

 “The tenure of every officer, employee or subordinate in the classified service of the state, the counties, cities and city school districts thereof, holding a position under the provisions of this act, shall be during good behavior and efficient service; but any such officer, employee or subordinate may be removed for * * * inefficiency,” etc. Section 486-17a, General Code.
 

 It is conceded that Mansfield was “laid off without pay” pursuant to a city ordinance reducing the number of its patrolmen in the interest of economy. If the claim of relator should be upheld, that the decedent should be restored with pay since the death of King, it would be impossible to fulfill the spirit of economy actuating the council’s action in reducing the safety force. Should we impair the city’s finances byVbligating it to pay those who not only perform no service, but are physically unable to do so if required? Such an interpretation of the law manifestly would result in economical disadvantage to the city.
 

 The judgment of the Court of Appeals, is affirmed in Cause No. 26242.
 

 Cause No. 26257 is a companion case presented to this court at the same time as the former. The companion case originated in the same appellate court as two cases, one by the widow, and the other by the minor child of the deceased patrolman, Mansfield, wherein were sought writs of mandamus compelling the respondents to place the relators upon the pension roll of the police relief fund and to pay them their pensions accruing since the time of the decedent’s death. In the appellate court these two cases' were consolidated, and were heard by the Court of Appeals on the petitions of relators, the answers of respondents and an agreed statement of facts. The appellate court
 
 *241
 
 found in favor of the respondents upon the issues joined and found'that the relators were not entitled to a writ of mandamus. The agreed statement of facts comprises those that were incorporated in the preceding case, No. 26242, and, in addition, contains the following facts pertinent to the pension cause:
 

 It is agreed that on June 22, 1935, the widow and child made applications to the Board of Trustees of Police Relief Fund, for a pension under Section 5 of Rule 26 pertaining to the police relief fund of the city of Canton. That rule provides that where “any member of the police department who * * *' s¿all die from any cause while a member of said department, or shall die from any cause after being honorably discharged from actual service in said department,’-’ leaving widow or minor child, the board of trustees, upon being satisfied that the requirements of the section had been complied with, should authorize pension payments to such widow and child.
 

 Applications for pensions having been made to the Board of Trustees of Police Relief Fund, its secretary, on August 23, 1935, after acknowledging the application, reported adversely to the granting of pensions and wrote the following letter to relators’ counsel:
 

 “The board has been advised through the city solicitor’s office and the secretary of the Civil Service Commission that Elvin C. Mansfield, formerly a police officer of the city of Canton, Ohio, to the effect that he was not a member of the department at the time of his demise on the ninth day of July, 1934. This fact being established by court decision.”
 

 Counsel for the relators and respondents agree that the question to be determined “is whether or not the applicants are entitled to pensions, and as to whether or not Elvin C. Mansfield was, for the purpose of payment of pension, a member of the police department of the city of Canton, on the ninth day of July, 1934.”
 
 *242
 
 This court has decided that the police relief fund of a city is established, administered and distributed under rules and regulations adopted by a board of trustees, and that the right of a retired police officer to pension from the fund is governed by the rules in force at the time of his retirement:
 
 State, ex rel. Eden,
 
 v.
 
 Kundts et al., Bd. of. Trustees,
 
 127 Ohio St., 276, 188 N. E., 9. Section 5, Rule 26, adopted by the board for the city of Canton provides for pensions to the dependents of members of the police department who (a) should die from any cause while a member of the department, or (b) should die from any cause after being honorably discharged from actual service in the department. The second provision of the rule does not apply, since Mansfield did not die after being honorably discharged from actual service.
 

 This leaves for our determination the single question whether, at the time of his death on July 9, 1934, under the circumstances disclosed by this record, Mansfield was in fact a member of the police department of the city. It is conceded that on January 9, 1934, he was laid off -without pay and ordered to return all equipment which was property of the department, and that since January 9, 1934, he has performed no service whatever as a member of the department. His' connection with the police department entirely ceased, and that situation would continue until the appointing authority had restored his status as a member for active duty. Under the conceded facts and under our holding in the previous case, while Mansfield might eventually become entitled to restoration, he was not entitled to restoration so long as he was physically unable to perform official duties.
 

 The rule adopted by the board of trustees could apply only to those members of the department who are capable of active duty. We are in full accord with the holding of the appellate court that Mansfield, after
 
 *243
 
 January 9, 1934, did not resume his status as a patrolman; and that he was not a member of the police department at the time of his death. It is the claim of counsel for relators that, had the appointing authority restored him to his position as a member of the department- under Section 486-176, General Code, Mansfield, in that event, would have established a pensionable status; and that it is inequitable to deprive the officer of that status by the failure to restore him to his old position. A complete answer to that contention is found in our holding in the previous case that the appointing authority had no right to restore one to his position who is physically incapable of performing its duties. A similar equitable argument was advanced in the
 
 Kundts
 
 case,
 
 supra.
 
 There a policeman was so seriously injured as to be unable to perform any service for more than two months; but thereafter was assigned to light duty under salary for nearly nine years. In closing his opinion in the cited case, the judge remarked: “Some evidence was introduced tending to show that the relator was not able to perform the duties of patrolman during approximately nine years, and some equity is claimed for him upon that ground, it being urged that he should have been at that time honorably retired by reason of his disability.”
 

 A writ of mandamus should be awarded, not upon equitable considerations, but to compel the performance of an act which the law specifically enjoins as a duty. Section 12283, General Code.
 

 The judgment of the Court of Appeals is affirmed in Cause No. 26257.
 

 Judgments affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Williams and Myers, JJ., concur.