The State, ex rel. Curtis, Appellant, v. DeCorps, Dir., et al., Appellees.

(Decided October 25, 1937.)

*Mr. D. O. Curtis* and *Mr. H. Clifton Grabill,* for appellant.

*Mr. Paul G. Weber,* city solicitor, for appellees.

Sherick, J.    The relator, Clarence John Curtis, having been denied a peremptory writ of mandamus in the Court of Common Pleas, appeals his cause to this court.  It is asked that he be reinstated to the position of pumpman, and that he be awarded the emoluments of that position during the period he has been deprived thereof.  The agreed facts disclose the following circumstances.

On June 27, 1932, the relator and another, having successfully passed a competitive examination, were appointed to the positions of pumpmen in the classified civil service of the city of Canton.  On August 1, 1932, prior to relator's employment, the city duly enacted an ordinance providing for nine pumpmen in the water works department and fixing their salary.  Thereafter, on February 3, 1933, seven others, having passed a competitive examination, were appointed as pumpmen.  On February 26, 1934, council ordained that the number of pumpmen be reduced to seven.  The next day the relator was notified in writing that he was laid off for the purpose of economy.  It is further

in evidence that in 1921 the city Civil Service Commission adopted a resolution which in part provided, that:

"Whenever from lack of work or funds, or other cause, it becomes necessary in any department to temporarily reduce the working force in any position, such reduction shall be made in the inverse order of the appointment of the employees in such position, and the employees last appointed being first laid off; and in determining the order in which such employees shall be laid off, the order in which such employees were certified by the commission shall control."

Since the layoff, the number of pumpmen has been continued at seven, during which time but one vacancy has been filled and that by the other pumpman who was examined with the relator. The relator had a higher grade than the appointee reinstated.

Both parties agree that there is but one question for solution, which is: Does the civil service commission of a municipality have the authority to make a regulation which would require the appointing authority to lay off employees in the inverse order of the appointment?

Relator rests his right to the relief sought upon the provisions of Section 486-19, General Code. It is said that by its terms the commission was fully empowered to adopt the resolution previously noted; that its adoption is not only in keeping with the statute, but also with the intent and purpose of the law; and that to deny the force of the resolution is but to destroy the purpose and efficacy of the statute which in part reads as follows:

"* * * Such municipal commission shall prescribe, amend and enforce rules not inconsistent with the provisions of this act for the classification of positions in the civil service of such city * * *; for examinations and registrations therefor; and for appointments, pro-

motions, removals, transfers, layoffs, suspensions, reductions and reinstatements therein; and for standardizing positions and maintaining efficiency therein. Said municipal commission shall have and exercise all other powers and perform all other duties with respect to the civil service of such city * * *, as herein prescribed and conferred upon the state civil service commission with respect to the civil service of the state; and all authority granted to the state commission with respect to the service under its jurisdiction shall, except as otherwise provided in this act, be held to grant the same authority to the municipal commission with respect to the service under its jurisdiction * * *."

The respondents assert that the powers and duties of a municipal commission are identical with those possessed by the state commission; that each have express authority to promulgate administrative rules and regulations, but only in furtherance of statutory enactments which define public policy; but that such may not be promulgated for the purpose of amending a statute. If such were countenanced the commission would be but enlarging its powers by legislative act.

In *State, ex rel. Mansfield,* v. *Turnbull, Mayor,* 132 Ohio St., 235, 239, 6 N. E. (2d), 971, it is pertinently said that "the keystone of the arch in the structure of our civil service law pertaining to its administration is fitness and 'efficiency.' " Its major purpose is therefore not the retention in position of a classified civil service employee irrespective of all other reason. When a position is to be filled under municipal civil service, it is a prerogative of the appointing power that the city's commission certify the names of three who are eligible for appointment to the place to be filled. By this procedure discretion is lodged in the appointing power to select one of three. By these enactments the public policy of the state was declared,

and the powers and duties of the commission and appointing officers were generally defined. In Section 486-17, General Code, lay-offs and suspensions are treated. Section 486-17a, General Code, has to do with removals for cause. In the next succeeding Section, 486-17b, is found a specific limitation on the appointing power. It is therein prescribed:

"Whenever it becomes necessary in a police or fire department, through lack of work or funds * * * to reduce the force in such department, the youngest employee in point of service shall be first laid off. Should a position in the police or fire department once abolished or made unnecessary be found necessary * * * the oldest employee in point of service of those laid off shall be entitled to same * * *."

It is perceived that this section specifically creates a limitation on the rights given under the general appointing power to suspend or lay off in the case of police and fire department employees; but it extends no further than the class of employees embraced within its expressed terms. It therefore follows that this section can have no application in the case of the relator, a pumpman.

The relator, however, invokes the authority claimed to be reposed by Section 486-19, General Code, in a municipal commission. It is maintained that this section delegated full authority to the local commission for its adoption of the resolution of 1921, which has been hereinbefore quoted. It is also urged that if the power of the commission to so resolve is denied, that it necessarily follows that Section 486-19, General Code, be held unconstitutional. This reasoning is fallacious. It is the purpose of Section 486-19, to confer upon the commission power and authority to promulgate administrative measures to accomplish the public policy of the state as defined and prescribed in the statutes enacted. It was not intended thereby to

place legislative powers within municipal commissions to amend existing statutes. Clearly if the resolution accomplishes what the relator asserts, then its effect is to enlarge the provisions of Section 486-17*b*, General Code, so as to include appointees in all departments. If that had been the policy of the Legislature the section no doubt would have been so written.

On the other hand the resolution cannot be justified upon a theory of municipal home rule. The commission's resolution is not an ordinance of council. It cannot amend or supplant a specific statute limiting the appointing power's discretion. It is in fact an attempt to enlarge the commission's jurisdiction, its duties and powers which the Legislature has created and defined. Its further purpose, as previously noted, is to withdraw from the appointing authority the powers of discretion lodged in it by statute, which define the state's public policy with respect to classified civil service employees generally.

Respondents aptly make remark that Section 486-9, General Code, which pertains to the adoption of rules and classification by the state commission, is very similar to the terms of Section 486-19, General Code. Both sections confer procedural powers and create certain duties, but in no sense do they grant legislative prerogative. In *Davis et al., Civil Service Comm.,* v. *State, ex rel. Kennedy, Dir.,* 127 Ohio St., 261, 187 N. E., 867, a charter city civil service commission so resolved. It was found that no provision of the city's charter granted any such power and in that event such authority did not exist in it. The court said in the course of its opinion:

"There should be some limit to the tendency to confer upon boards, commissions, and individual executive officers power to proclaim an *ipse dixit* having the practical effect and force of law, and there should be some restriction upon the tendency of boards and

commissions to confer power upon themselves under the guise of rules of procedure, which are authorized only in the exercise of powers duly granted. * * *

"If additional jurisdiction is to be conferred, it must be sought at the source of such power."

There being no statute requiring that the appointing authority must lay off employees in the water works department in the inverse order of their appointment, it follows that that authority may exercise a discretion, with the thought in mind of fitness, in laying off any employee he may choose when called upon in economy's name. Neither is he bound for a like reason to reinstate the layed-off employee in preference to others certified on the list of eligibles when the exigency has passed. See Section 486-16, General Code. The question propounded must be answered in the negative and the judgment affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and LEMERT, J., concur.