29 N.J. Super. 383 (1954)
102 A.2d 662
JAMES L. BALLURIO, PLAINTIFF-APPELLANT,
v.
ALBERT CASTELLINI, DIRECTOR OF STREETS, ROADS AND PUBLIC PROPERTY OF THE CITY OF VINELAND, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE CITY OF VINELAND, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1953.
Decided January 19, 1954.
*385 Before Judges JAYNE, FRANCIS and SMALLEY.
Mr. Nathaniel Rogovoy argued the cause for the appellant (Messrs. Greenblatt & Greenblatt, attorneys).
Mr. Lawrence N. Park argued the cause for the respondents (Mr. D. Joseph Novaria, attorney).
*386 The opinion of the court was delivered by FRANCIS, J.A.D.
The basic issue presented here is whether an employee in the public service, who has met the statutory conditions as to veteran status, age and length of service, must be retired on pension when he applies therefor even though there are serious charges pending against him at the time, which, if proved, will justify his dismissal from the service.
N.J.S.A. 43:4-2 provides:
"When an honorably discharged soldier, sailor or marine has or shall have been for twenty years continuously or in the aggregate in office, position or employment of this State or of a county, municipality or school district or board of education, the body, board or officer having power to appoint his successor in case of vacancy may, with his assent, order his retirement from such service, or he shall be retired on his own request."
N.J.S.A. 43:4-1 imposes the additional qualification that the veteran shall have attained the age of 62 years, and R.S. 43:4-3 provides that a person who complies with sections 1 and 2 "shall be entitled" to a pension.
On or about March 28, 1953 appellant James L. Ballurio was arrested on complaints charging him with the crime of abortion in violation of N.J.S. 2A:87-1. At this time he was in the employ of the City of Vineland as a foreman in the street department. He was an honorably discharged veteran of World War I, then 62 years of age, and he had been employed in the qualifying public service continuously for more than twenty years.
On April 2, 1953 Ballurio was suspended from his employment for a period of 30 days from March 31, 1953. The reasons assigned in the notice of suspension were:
"* * * You have been arrested and are being held for the Grand Jury on the charge of committing the crime of abortion and further are charged of conspiring to commit abortion and thereby your conduct is unbecoming an employee in the public service."
He was further informed that he was subject to removal in the absence of a satisfactory explanation or defense and that a hearing would be held on April 23, 1953 before respondent, *387 Albert Castellini, the Director of Streets, Roads and Public Property.
On April 8, 1953 Ballurio served upon the director (he being the officer empowered to appoint a successor) a written request for retirement under N.J.S.A. 43:4-1 et seq. An earlier application for such retirement, made two days after the arrest, was filed in error with the city clerk.
No action was taken on the request for retirement because of the pending charges, and on April 18 and 22, 1953 appellant filed a complaint and amended complaint in lieu of mandamus, seeking a judgment directing that he be pensioned.
The hearing before the director was held as scheduled and on May 5, 1953, Ballurio was notified that his explanation of the alleged criminal offenses was not satisfactory and he was therefore suspended until their final determination in the Gloucester County Court.
After taking some testimony in the prerogative writ proceeding, the trial court concluded that appellant had met the age, length of service, and veteran status conditions of the statute. However, on the authority of McFeely v. Board of Pension Commissioners, 1 N.J. 212 (1948), he held that respondent director was justified in withholding action on the pension demand pending the outcome of the criminal charges. And he declared that acquittal would result in the granting of the pension but conviction would require denial thereof. The action thus being premature, judgment was entered for respondent. 27 N.J. Super. 113 (Law Div. 1953).
On this appeal, the parties are in agreement that the McFeely case is not applicable because the forfeiture statute which was involved (R.S. 2:160-9, now N.J.S. 2A:135-9) relates only to persons holding an elective or appointive office or position. Ballurio, being an ordinary municipal employee, is not in this category. However, if the result in the trial court was correct, the duty of this court is plain. In such case there must be an affirmance even though an incorrect reason formed the foundation for the judgment.
*388 Seven indictments were returned against appellant by the Gloucester County grand jury, one against him alone and the other six against him and his alleged aiders and abetters, all based on an abortion committed prior to the date of his application for retirement. On July 2, 1953 his plea of not guilty was retracted and a plea of nolo contendere was entered to the one indictment which charged him alone with the commission of the offense. On this plea he was sentenced to New Jersey State Pricon for three to five years, but the sentence was suspended subject to a five-year probation term and the payment of a fine of $2,000.
The indictments were not introduced at the hearing in the Law Division, but the opinion shows that they were considered. 27 N.J. Super. 113 (1953). Likewise, proof of the conviction was not presented although the sentence was imposed 28 days before the opinion was filed. However, on respondent's application prior to the listing of this appeal for argument, we allowed the record of the criminal proceedings to be added to the appendix under R.R. 1:5-4. 28 N.J. Super. 368 (App. Div. 1953).
On the oral argument, a second motion was made to add to the appendix a certified copy of Ballurio's dismissal from employment by reason of the conviction. The dismissal is dated August 28 and was available when the first motion was made. While we disapprove of piecemeal procedure of this type, the incontrovertible nature of the document has moved us to receive it under the same rule.
Obviously, if appellant had been discharged prior to the filing of his application for retirement or was no longer an employee of the city at the time, no right to pension existed. Walter v. Police and Fire Pension Commission of City of Trenton, 120 N.J.L. 39 (Sup. Ct. 1938). However, he maintains that since he had met all the statutory prerequisites while still in the employ of the city, he was entitled to the pension as a matter of law and the criminal action against him can have no effect upon that right. The claim is that since the legislative conditions of age, length of service and veteran status were satisfied, the application *389 had such dynamic force as to be self-executing and the director's only function was the ministerial one of granting it.
Our attention is called to the fact that unlike the pension statute which was involved in the McFeely case, namely, N.J.S.A. 43:16-1, the qualifying words "served honorably" do not appear in the Veterans' Pension Act. Therefore, it is urged that only service for the prescribed period is necessary to vest the claim to the pension.
The industry of counsel has supplied us with the statistical data that Title 43 of the Revised Statutes contains 60 separate pension acts. Of these, nine speak of "honorable service" or use equivalent words, and 51 contain no such reference. In the nine instances, the employees affected are certain categories of policemen and firemen and municipal water department employees. The 51 others include a heterogeneous group of employees, including policemen and firemen. One class cannot be distinguished from the other on any rational basis. Study of the various groups discloses no legislative pattern from which the deduction may be made that a deliberate intention is manifested to demand honorable service in some employments and not in others.
Consideration of all these acts in the light of the sui generis character of a public pension inevitably leads to the conviction that "honorable" service is implicit in every such enactment. A pension is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. And its utility would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefeasible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime.
But we need not read "honorable" into the statute in order to deny the right to a pension. While Ballurio had Civil Service Act protection and veteran status, he was *390 subject to discharge for cause. R.S. 11:22-38; 11:15-2; 38:16-1. Obviously, conviction of a crime involving moral turpitude constitutes such cause. Rule 59 of the Civil Service Department; Plunkett v. Board of Pension Commissioners of City of Hoboken, 113 N.J.L. 230, 233 (Sup. Ct. 1934), affirmed 114 N.J.L. 273 (E. & A. 1935). Moreover, in the event of a criminal charge against him, he was liable to suspension until the charge was disposed of. In fact, the Legislature has decreed that "nothing contained" in the civil service law should limit the power of suspension. R.S. 11:22-23. These were incidents of his employment which marched along with it from its very inception.
In our judgment, therefore, in order to make a rational whole of the privileges and conditions of the public employment and pension in the present case, the Veterans Pension Act, supra, and the Civil Service Act, R.S. 11:22-1 et seq., must be considered as interrelated at least so far as the matter of suspension and discharge is concerned.
What then was the effect of Ballurio's suspension from employment prior to the application for retirement? The fact that he had veteran status, the age qualification, and the minimum service requirement, does not signify that he had a vested right to the pension and had become a special type of employee, no longer subject to discharge for cause. Plunkett v. Board of Pension Commissioners of City of Hoboken, supra. Obviously, suspension is not synonymous with discharge or dismissal; when it occurs the employment continues but becomes subject to the suspension. Cf. Murley v. Township of Raritan, 117 N.J.L. 357 (Sup. Ct. 1936). And in such case it must be considered that not only are the duties and obligations of the employment removed temporarily but the rights and privileges as well. Thus, the Civil Service Department rules define suspension as, among other things, "removal preliminary to hearing and discharge from the service." Rule 64.
Accordingly, when Ballurio was suspended, he was deprived of the privilege of obtaining a pension until the criminal charge was disposed of. Acquittal would have *391 restored the claim, plus the right to back pay during the intervening period. But conviction must be deemed to wipe out the temporarily inoperative privilege as of the date of suspension.
There is no case in this State which deals directly with our problem and study of those to which we have been referred as analogous does not demonstrate that the pension application here must be considered as self-executing.
It is true that our courts have expounded the general doctrine that when the conditions of a pension statute are met, the appropriate board or body has no discretion but to grant the application. Pangburn v. Ocean City Police, etc., Commission, 136 N.J.L. 501 (Sup. Ct. 1948); Schliske v. Firemen's and Policemen's Pension Fund Commission, 133 N.J.L. 249 (Sup. Ct. 1945); Beronio v. Pension Commission of City of Hoboken, 129 N.J.L. 557 (Sup. Ct. 1943), affirmed 130 N.J.L. 620 (E. & A. 1943). But no question of suspension or of pending charges was presented in any of those cases. And Bederski v. Policemen's & Firemen's Pension Board, 4 N.J. Misc. 637 (Sup. Ct. 1926), affirmed 104 N.J.L. 163 (E. & A. 1927), on which appellant relies, is not a mandate for reversal.
There a policeman was shot and killed while off duty and under circumstances which were strongly suggestive that he was engaged in a criminal undertaking. His widow applied for a pension under a statute prescribing that a widow of a member of the police department who lost his life in the performance of his duty, or who died from causes other than injuries received in the performance of duty, should receive a pension. The Supreme Court, after pointing out that Bederski was not under suspension or under any charges at the time of his death, said:
"Bederski died from causes other than injuries received in the performance of duty. The language of the statute plainly includes a case like the one under consideration. It may be that the draftsman of the act, if he had foreseen a state of facts like the one herein presented, would have so drafted the act as to make it inoperative in the present case. But the act is not so drawn. Its *392 language is plain. Notwithstanding Bederski may have been engaged in a criminal undertaking when he actually received the wound which caused his death, his widow is entitled to a pension."
In appraising the impact of that opinion, the reference to absence of pending charges cannot be overlooked. Nor can the prompt amendment of the act be disregarded. N.J.S.A. 43:13-20; L 1927, c. 190.
The authorities in other parts of the country are in conflict with respect to the resolution of problems similar to the present one and reference to some of the cases is of interest.
The Appellate Division of the New York Supreme Court in People ex rel. Hardy v. Greene, 87 App. Div. 589, 84 N.Y.S. 673 (1903), reached the conclusion that we have adopted and the opinion is so apropos that fairly lengthy reference thereto seems worthwhile.
Hardy, a police captain and a member of the force for 36 years, applied for a pension under an act which provided for retirement on written application after 20 years of police duty. The day before his application was filed, serious charges of neglect of duty were made against him and he was suspended from duty. The pension was denied because of the pending charges.
On appeal, the contention was made that the statute having been complied with, the right to retirement was absolute. The court decided otherwise, saying:
"The assertion of this unusual right is based upon a literal reading of the statutes governing the case, without giving due regard to their undoubted intent and beneficial purpose.

* * * * * * * *
It seems to me that the object of the two statutes which I have quoted is quite apparent, and that it does not include the creation of an indefeasible right to retirement, notwithstanding that the member seeking to be retired has been guilty of gross misconduct in office. The provision in the statute relating to the city of Brooklyn is, like all pension provisions, designed to encourage long and faithful service by the assurance of ultimate honor and the reward of a lifelong competency. While there is no provision in the statute to the effect that the applicant for retirement must be in good standing at the time, it must be assumed, from the very nature and *393 purpose of a pension, that no successful application could be made by one who was under suspension pending the trial of charges relating to his official conduct. The pension roll is a roll of honor  a reward of merit, not a refuge from disgrace; and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who, on their merits, as distinguished from mere time of service, might be dismissed from the force for misbehavior.
* * * He is deprived of the right to retire because he has been suspended from the force until the charges pending against him have been tried; and should he be, unfortunately, convicted and dismissed as a punishment, his right to retirement would be lost by his own delinquencies, and not in a legal sense by reason of his continuance in service. His suspension was authorized by section 292, p. 124, of the Greater Charter, supra, and such suspension naturally and necessarily carried with it for the time being suspension from the enjoyment of the privileges, as well as from the performance of the duties, incident to the position.
* * * If an intention existed to confer upon a favored class the special privilege claimed by the relator, it should have been manifested by explicit expression. It should not be construed into the law, for its effect would be not only to work injustice upon the other members of the force, but to greatly impair the efficiency of the department as a whole; for nothing can be imagined more likely to discourage ambition, to destroy discipline, or to stifle stimulus than the creation of a privileged class among the police, who should be possessed by law of the absolute right to avoid the consequences of violation of duty by the mere voluntary adoption of an honorary retirement, enriched by the enjoyment of a life annuity."
Other New York cases which exhibit much the same philosophy are Eberle v. LaGuardia, 285 N.Y. 247, 33 N.E.2d 692 (Ct. App. 1941); People ex rel. Brady v. Martin, 145 N.Y. 253, 39 N.E. 960 (Ct. App. 1895); and People v. French, 108 N.Y. 105, 15 N.E. 188 (Ct. App. 1888). Pierne v. Valentine, 291 N.Y. 333, 52 N.E.2d 890 (Ct. App. 1943), contains some contrary language, but the Court of Appeals did not consider the effect on the right to retire of charges which are pending when an application for that purpose is filed.
In substantial agreement with People ex rel. Hardy v. Greene, supra, are State ex rel. Weber v. Board of Trustees, 123 Wis. 245, 101 N.W. 373 (Sup. Ct. 1904), and MacIntyre v. Retirement Board, etc., 42 Cal. App.2d 734, 109 P.2d 962 (D. Ct. App. 1941).
*394 Rather strongly opposed to the view we have espoused are State ex rel. Kirby v. Board of Fire Commissioners, 129 Conn. 419, 29 A.2d 452 (Sup. Ct. Err. 1942), and Bullock v. Spencer, 112 F. Supp. 147 (D.C. 1953). And, having in mind the language of L. 1938, c. 221, § 1 (N.J.S.A. 43:1-2), under which a pension already awarded is suspended during a period of confinement upon conviction of crime, Stiles v. Board of Trustees of Police Pension Fund, 281 Ill. 636, 118 N.E. 202 (Sup. Ct. 1917), is likewise to the contrary.
In any event, after analysis of all the various and divergent viewpoints, and study of the Veterans Pension and the Civil Service Acts, as well as their relation to each other in the governmental employment system, we have concluded that respondent's failure or refusal to act on the pension application until the criminal charges were terminated, was justified. Consequently, the determination of the trial court holding the prerogative writ proceeding to be premature was correct and should be affirmed. And considering the supplemental documentary proof which was added to the record under R.R. 1:5-4, we hold also that appellant is not entitled to the claimed pension.