HARRY E. WATT, PLAINTIFF-APPELLANT, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF FRANKLIN, IN THE COUNTY OF SUSSEX, DEFENDANT-RESPONDENT.

Argued March 12, 1956—Decided March 26, 1956.

Mr. *Emanuel A. Honig* argued the cause for the plaintiff-appellant.

Mr. *Lewis P. Dolan* argued the cause for the defendant-respondent (Mr. *Robert H. Lee* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J. This action in lieu of prerogative writ was brought by the plaintiff, Harry E. Watt, to compel the Borough of Franklin to pay him a pension pursuant to the direction of the Veterans' Pension Act, *R. S.* 43:4–1 *et seq.*, based on an aggregate of more than 20 years of

public service. From a judgment in favor of the defendant entered in the Law Division of the Superior Court, the plaintiff appealed, and we certified the matter on our own motion while it was pending in the Appellate Division.

The plaintiff retired from the office of collector of taxes for the Borough of Franklin on December 31, 1954, and applied to the borough for a pension pursuant to the Veterans' Pension Act, *supra*. At the time of his retirement the plaintiff was 64 years of age. He had served in World War I and was honorably discharged from the United States Army. The 20 years' service upon which the claim for pension is based is made up of six years' service as a member of the common council of the Borough of Franklin, a position for which he received no salary or other remuneration, one year as a member of the General Assembly of the Legislature, for which service he received a salary of $500. and 16 years as tax collector of the Borough of Franklin. during all of which time he received a salary for his services. At the time of his retirement he was paid at the rate of $1,200 per year.

The services rendered by him, though continuous in each office, were not so in point of total service. There was a period of two years between service as a member of the common council and service as a member of the General Assembly, and a period of one year between service as a member of the General Assembly and election to the office of tax collector.

The pertinent portions of the Veterans' Pension Act are as follows:

"This chapter shall apply to and include persons serving in and honorably discharged from the military or naval service of the United States, * * * in any war in which the United States is or has been engaged * * * provided, such designated persons shall have attained the age of sixty-two years or become incapacitated after twenty years of continuous or aggregate service for the duties of their office or position or employment." (*R. S.* 43:4–1)

"When an honorably discharged soldier, sailor or marine has or shall have been for twenty years continuously or in the aggregate in office, position or employment of this State or of a county, municipality or school district or board of education, the body, board or

officer having power to appoint his successor in case of vacancy may, with his assent, order his retirement from such service, or he shall be retired on his own request. * * *" (*R. S.* 43:4-2)

"A person so retired shall be entitled, for and during his natural life, to receive by way of pension, one-half of the compensation then being received by him for his service, which shall be paid in the same way and in the same installments as his compensation has been payable. No pension paid under this article shall be less than fifty dollars per month, unless the person so retired shall at the time of his retirement be receiving compensation of less than fifty dollars per month, in which case he shall be paid on retirement the full amount then being received by him for his service.

In case of retirement with pension from office or position under any other law of this state, the person retiring shall waive either his pension under that law or his pension under this article." (*R. S.* 43:4-3)

"Provisions for all pensions arising under this article shall be made in the appropriation or tax levy for the department of the public service from which the person shall be retired. No pension shall cease or become invalid by reason of the abolition of the department or office in which he served, or any change in its title." (*R. S.* 43:4-4)

██ In every case involving the application of a statute, it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them, *Carley v. Liberty Hat Mfg. Co.*, 81 *N. J. L.* 502, 507 (*E. & A.* 1910). A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation. But few statutes can boast of such clarity or stand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute, in its application to it, is clear and unambiguous.

█ The need for construction arises in two instances. As we move away from the ideal of a clear and unambiguous statute we find statutes that on their face are clear and unequivocal but in light of related legislation and of the surrounding facts and circumstances of the case in which

it is applicable, the true meaning becomes indefinite or obscure. In these instances it may be the plain meaning of the words themselves that casts doubt as to the true intention of the Legislature, or often it is the absurdity of the result flowing from a literal application of that plain meaning that causes wonder as to the true purpose of the enactment. Then, too, there are those less difficult instances in which the meaning of a statute is obviously obscure or doubtful, where the language used is *per se* capable of dual interpretation. When these circumstances appear the court is not only at liberty to interpret the statute but it is its solemn duty to seek out and give effect to the legislative intent evident from the aids available to it; *cf. Murphy v. Zink*, 136 *N. J. L.* 235 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 635 (*E. & A.* 1947); *Kessler v. Zink*, 136 *N. J. L.* 479 (*E. & A.* 1947); *Kelly v. Kearins*, 132 *N. J. L.* 308 (*Sup. Ct.* 1944).

When from the plain meaning of the words used in a statute reasonable men are led to question whether the Legislature intended a particular result, can it be said that their enactment is clear and unambiguous? We need not look any further than the plaintiff's own argument for justification for the exercise of our interpretative function. He concedes that if a literal application of the statute would create a manifestly absurd result, contrary to public policy, which the Legislature could not have reasonably intended, then the court would be permitted to construe the statute; *cf. Ballurio v. Castellini*, 29 *N. J. Super.* 383 (*App. Div.* 1954).

Applying these principles to the statute under review, there can be no doubt that full-time, career positions in the public service, salaried or otherwise compensated, by whatever manner they are properly commenced or continued, are within the contemplation of the statute under consideration. But here the three offices held by the plaintiff fall far short of that description. All appear to be part-time or non-career positions and one even without compensation. Since lack of compensation is a unique feature of the councilmanic

position, and since some portion of the service in that office would have to be counted to make up the statutory period of 20 years, we have directed our attention to it as a necessary inquiry and pass all others. Is such public service within the contemplation of the Veterans' Pension Act?

The basic philosophy underlying pensions to public officers fluctuates between the early view that they were mere gratuities bestowed by the sovereign in recognition of meritorious service previously rendered and the more modern concept that they are some form of delayed wages or salary to compensate the employee during his declining years when he is apt to be less productive for his long and faithful service; see the authorities collected in 67 *C. J. S.* under the title *Officers*, § 92b, p. 331; *Salz v. State House Commission*, 18 *N. J.* 106 (1955).

But whatever the actual purpose to be served by the Veterans' Pension Act, *supra*, the benefit here is measured by the *compensation* being paid at the time of retirement. In this respect again the present pension act is no different from those free pension acts which apply to salaried positions in the public service in which avowed purpose is recompense for career service. Unless this statute was intended to apply to paid positions only, it is meaningless and totally unreconcilable with any of the policies which could underly the promulgation of such benefits.

Who can deny the absurdity and unfairness of this result? A person who might serve ten years in a non-salaried gratuitous "office, position or employment" in the state or local government and then ten years in a salaried job could, if he was a veteran, retire at one-half the salary being received by him at the time of his election to retire; on the other hand, if another veteran should serve the first ten years in a salaried position and the last ten years in a gratuitous position, he would be deprived of any pension whatsoever unless and until he was able to render some service in an "office, position or employment" for which compensation was paid. In the latter case the person would not only have to serve a longer period in order to qualify for his pension

but he might also be deprived of it altogether. This is but a practical example of the plaintiff's construction in action and a most potent indication why the only reasonable construction of the statute is that unsalaried service rendered by the plaintiff in the office of borough councilman was not of the type intended for pension benefits under this statute.

The plaintiff argues that the historical and philosophical basis underlying this pension indicates that "the Legislature intended to grant preferential treatment to any public servant, salaried or not, who was entitled to be rewarded for military service." He says that there is a great distinction between a military pension which is a pure and simple "give away" and the modern pension concepts, that this benefit is militarily inspired and the considerations of career or service play no part in the policy of the enactment.

If this be so, why were the qualifications tied to civil or public service? If the sole purpose was to reward war veterans, then the great majority of them will go unrewarded since they are not in the public service. How then can the discriminatory result shown by the example cited be explained or justified?

In our view the purpose of the statute is more reasonably to be construed in accordance with the general purpose evident from the great majority of our pensions—recognition of long and faithful career service—but making possible, as a reward for war service, the earlier retirement or a larger benefit than might otherwise be due under some other act for the same public service; *R. S.* 43:4–3; *Murphy v. Zink,* 136 *N. J. L.* 235 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 635 (*E. & A.* 1947). The general emphasis is not upon the applicant's status as a veteran but upon his public service. It has been the obvious policy of this State to grant preferences and job protection to those who have risked their lives and health in the defense of our land, *R. S.* 11:27–1 *et seq.; N. J. S. A.* 38:16–1, 4, 5, 6; and our interpretation of the legislative intent is manifestly more consistent with this policy than with the unfair and discriminatory results fostered by the construction sought for by the plaintiff.

Implicit in this statute is the rendition of paid career service, *Ballurio v. Castellini, supra,* 29 *N. J. Super.* 383 (*App. Div.* 1954).

The judgment must accordingly be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice OLIPHANT—1.