81 N.J. Super. 138 (1963)
195 A.2d 32
ALFRED J. FROMM, JR., PLAINTIFF-APPELLANT,
v.
BOARD OF DIRECTORS OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Considered October 29, 1963.
Decided November 8, 1963.
*139 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Messrs. Weiner, Weiner & Glennon, attorneys for appellant (Mr. John T. Glennon, of counsel and on the brief).
Mr. Arthur J. Sills, Attorney General, attorney for respondent (Mr. Thomas C. McGrath, Jr., Law Assistant, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a final decision of the Board of Trustees of the Police and Firemen's *140 Retirement System (Board) denying him further pension payments for a service-connected disability sustained while a member of the Westfield Police Department, because of a conviction involving his employment. The appeal is submitted on an agreed statement in lieu of record.
Plaintiff, a sergeant in the Westfield Police Department, held the position of violations clerk of the Westfield Municipal Court. See R.R. 8:10-10 for the duties of a violations clerk. As a result of an investigation of the Westfield Police Department, plaintiff was indicted in January 1959 under N.J.S. 2A:136-1 on 25 counts for altering and downgrading traffic tickets. See R.R. 8:10-1 and Local Criminal Court Form 12, relating to the Uniform Traffic Ticket. The case was re-presented to the January 1960 Union County grand jury, and a new indictment in 25 counts was returned charging the same offense. (In this connection, consult State v. Fromm, 65 N.J. Super. 30 (1961), where we reversed an order denying Fromm's motion to dismiss an indictment returned against him as fatally defective because uncertain and indefinite, and remanded the matter. The indictment there under attack charged that plaintiff, between January 1, 1958 and July 18, 1959, "unlawfully did alter and falsify documents belonging to the Municipal Court of said Town of Westfield," contrary to N.J.S. 2A:136-1.)
At the initial trial of the new indictment on November 1, 1961 in the Union County Court, 7 counts were dismissed on motion during trial, the jury returned verdicts of not guilty on 15 counts, and was unable to agree on the remaining 3. At a subsequent trial of these three counts held January 10, 1962, the jury found plaintiff not guilty on one count and guilty on the remaining two. He was ultimately fined $100 on each of the latter counts.
On July 20, 1959, prior to the return of the new indictment and during the police department investigation, Sergeant Fromm was transferred from his position as violations clerk to the police motorcycle detail assigned to traffic duty. While on duty in November 1959 he sustained an injury to his lower *141 back  a herniated disc. This constituted a service-connected disability which would have entitled him to a pension at two-thirds of his annual salary under section 7 of the Police and Firemen's Pension Act, N.J.S.A. 43:16A-7, but for the convictions mentioned above.
In May 1960 plaintiff, as a member of the Police and Firemen's Retirement System, applied under N.J.S.A. 43:16A-7 for a service-connected disability pension. Defendant Board, by resolution of July 18, 1960, granted him a monthly pension of $346.56, commencing August 1, 1960. This pension was expressly conditioned upon the disposition of the pending investigation and the indictment against Fromm; in the event the indictment resulted in a conviction, the Board was to take such further action as might be required. After plaintiff had been found guilty of violating N.J.S. 2A:136-1 and fined, the Board on June 1, 1962 suspended pension payments and advised him of its action. On October 25, 1962 the Board notified plaintiff of its official decision to terminate further pension benefits because of his conviction. This appeal followed.
Plaintiff contends that: (1) conviction under N.J.S. 2A:136-1 should not and does not terminate service-connected pension benefits conditionally granted under N.J.S.A. 43:16A-7; (2) violation of N.J.S. 2A:136-1 does not involve a crime of moral turpitude; (3) "honorable service" is not a condition precedent to the granting of a service-connected pension under N.J.S.A. 43:16A-7; (4) such pension can be suspended only while the beneficiary is confined to a penal institution, as provided in N.J.S.A. 43:1-2; (5) the Board is estopped from denying him pension benefits; and (6) the provisions of N.J.S. 2A:135-9 do not affect his pension rights.
The heart of this appeal lies in plaintiff's contention that he is not disqualified from receiving service-connected disability payments under N.J.S.A. 43:16A-7 merely because he was convicted of crime. He argues that pension statutes are to be liberally construed to effectuate the legislative intent, *142 citing Bederski v. Policemen's and Firemen's Pension Board of Newark, 4 N.J. Misc. 637, 134 A. 90 (Sup. Ct. 1926), affirmed per curiam 104 N.J.L. 163 (E. & A. 1927). That statute, he notes, makes no mention of "honorable service." Referring to the Policemen's and Firemen's pension Fund Act, R.S. 43:16-1 et seq., as amended, he calls attention to the fact that N.J.S.A. 43:16-2, dealing with retirement for disability, makes no mention of honorable service in its first paragraph providing for a service-connected disability pension. On the other hand, the second paragraph, providing for a non-service disability pension, requires that the applicant "shall have served honorably." And N.J.S.A. 43:16-1, dealing with retirement for age and service, similarly requires that the applicant "shall have served honorably."
Plaintiff's argument that he is entitled to pension benefits because N.J.S.A. 43:16A-7 does not make honorable service a condition precedent to the grant of a pension has already failed of acceptance in our courts. In Ballurio v. Castellini, 29 N.J. Super. 383 (App. Div. 1954), counsel analyzed the 60 pension acts which make up Title 43 of the Revised Statutes and called the court's attention to the fact that only 9 spoke of "honorable service" or used equivalent words, while 51 contained no such reference. Judge (now Justice) Francis, who wrote for the court in that case, could discern no pattern from which a deduction might be made that the Legislature had deliberately manifested its intention to demand honorable service in some employments and not in others. The sui generis character of a public pension, he said, inevitably leads to the conviction that "honorable service" is implicit in every pension enactment, for a pension "is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service." (at page 389) And see Pfitzinger v. Board of Trustees, etc., Retirement System, 62 N.J. Super. 589, 598-9 (Law Div. 1960).
A police officer occupies a unique position in our society. As we said in In re Emmons, 63 N.J. Super. 136, 140 *143 (1960), he "stands in the public eye as an upholder of that which is morally and legally correct."
It is, of course, axiomatic that one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service. Plunkett v. Pension Comm'rs of Hoboken, 113 N.J.L. 230, 232-3 (Sup. Ct. 1934), affirmed 114 N.J.L. 273 (E. & A. 1935). The court in that case observed that honorable service is "characterized by or in accordance with principles of honor. One so serving is scrupulously upright, and shows a fine regard for obligations as to conduct." (at page 233)
To accept plaintiff's contention that a service-connected disability pension is not conditioned upon honorable service would be to subscribe to the totally unacceptable proposition that a policeman could retain pension benefits after being convicted of a crime committed in flagrant disregard of his sworn duty to uphold the law. Discipline would vanish and morale decline. The resultant harm to the community would be immeasurable.
In this connection it may be noted that R.S. 43:11-1, dealing with municipal pensions, provides that
"* * * A member of [a municipal police or fire department] found guilty before a court of competent jurisdiction of having committed a crime may be dismissed or punished in any manner provided by law."
And N.J.S.A. 43:16A-23, part of the Police and Firemen's Retirement System Act with which we are here concerned, contains a similar provision. These acts lend support to our conclusion that a policeman's pension rights may be forfeited if he is convicted of a crime. Compare N.J.S. 2A:135-9, relating to elective or appointive offices or positions in the state or municipal service.
In Walter v. Police and Fire Pension Comm'n of Trenton, 120 N.J.L. 39 (Sup. Ct. 1938), a chief of police was held to have forfeited his right to a pension by reason of his conviction *144 for malfeasance in office, the malfeasance having occurred after he had become eligible for a pension. The court there said:
"Deductions from salary, moreover, create no vested right to a pension. * * * A pension is, in effect, but the taxpayers' reward, given pursuant to legislative mandate, for honest and efficient service. * * * To bestow that reward upon one whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency; to burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed upon him. Such a result will never be countenanced by any word, act, or judgment of this court." (at page 42)
Plaintiff's reliance upon Bedersky v. Policemen's and Firemen's Pension Board, above, is misplaced. That case was distinguished from the factual situation which obtains here by the court which decided Ballurio, above, 29 N.J. Super., at pages 391-2. We consider what was said in Ballurio dispositive; plaintiff's pension was conditioned upon honorable service.
The question which must next be answered is whether a conviction for altering and downgrading traffic tickets is inconsistent with honorable service. Clearly, this is so. We entertain no doubt on the matter, in the light of what our courts have said in the decisions to which we have referred.
We find no merit in plaintiff's claim that a violation of N.J.S. 2A:136-1 does not involve the crime of moral turpitude. That statute reads, in pertinent part, that
"Any person who * * * alters * * * falsifies * * * any public record, or any part thereof, or any writ, return, panel, process, minutes, documents, book or other proceedings of or belonging to any court in this state, or to the office of the clerk of any court, is guilty of a misdemeanor. * * *"
In Berardi v. Rutter, 42 N.J. Super. 39, 48 (App. Div. 1956), affirmed 23 N.J. 485 (1957), we stated that where an intent to defraud constitutes an essential element of an offense, the offense surely involves moral turpitude. The *145 Berardi case involved falsification of a federal tax return with intent to evade the tax. An intent to defraud the Federal Government is an essential element of that crime. 26 U.S.C.A. 3616(a). We need not pass on the question of whether an intent to defraud is requisite to a violation of N.J.S. 2A:136-1. Suffice for the purpose that under the facts of this case the result of altering and downgrading traffic tickets was to defraud the State. Even-handed justice for all traffic violators was defeated and the enforcement of our motor vehicle laws undermined.
In United States ex rel. Iorio v. Day, 34 F.2d 920 (2 Cir. 1929), Judge Hand recognized that "moral turpitude cannot be exactly defined by a rule to fit all cases. It may be or may not be said to exist, depending on the facts, conditions and circumstances." We need not characterize plaintiff's actions as involving moral turpitude in order to affirm the Board's decision. We do not read the Ballurio case as limited to situations of moral turpitude.
The remainder of plaintiff's contentions deserve only brief comment. N.J.S.A. 43:1-2, which suspends pension payments to any person while confined in a penal institution as a result of conviction of a crime involving moral turpitude, has no application in the present factual setting. Nor do we find pertinent N.J.S. 2A:135-9, which forfeits the office or position, elective or appointive, of a person who is convicted of a misdemeanor touching the administration of his office or position, or which involves moral turpitude.
Plaintiff claims that the Board is estopped from denying him pension benefits. His argument is that the municipality chose not to suspend him from his duties, as it might have under R.S. 11:22-23. No formal charges were preferred against him. Rather, he was transferred from the position of violations clerk to traffic duty. He asserts that there is nothing to show that he did not carry out his traffic duties in a competent and honorable manner. He sustained his disability while exposed to the hazards of a motorcycle traffic *146 officer, so that to deny him the right to receive his disability pension would be unjust and inequitable.
The defect in plaintiff's argument is that he fails to explain just how the Board and the trust fund it administers can be bound by the municipality's action  assuming that estoppel would lie against the municipality. That he received lenient treatment at the hands of the local officials cannot and does not stand in the way of defendant Board's having taken the only proper action possible, which was to deny pension benefits to one who flagrantly violated his public duty.
Affirmed.