133 N.J. Super. 72 (1975)
335 A.2d 559
EDWARD L. MOUNT, PLAINTIFF-APPELLANT,
v.
THE TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1975.
Decided March 5, 1975.
*77 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Mr. Henry A. Hill, Jr., argued the cause for appellant (Messrs. Mason, Griffin & Pierson, attorneys; Mrs. Susan F. Baxendale on the brief).
Miss Prudence H. Bisbee, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by SEIDMAN, J.A.D.
This appeal presents two issues, both seemingly of first impression in this jurisdiction. At least, counsel have not brought to our attention any reported case on all fours with the matter before us, and our own research has disclosed none.
One issue is whether, in the case of a public employee who retired and is receiving a pension under a retirement system, and is thereafter indicted for offenses allegedly committed during his employment, the trustees of the retirement system may, upon notice and after a hearing, suspend further pension payments pending a determination of the indictment. The other, assuming the existence of the power to suspend, is what must be shown at the hearing to warrant such suspension.
Edward L. Mount was employed by the County of Mercer as county engineer from January 1, 1949, until June 19, 1973, when, having attained the age of 68, he applied for and was awarded a retirement allowance under the Public Employees' Retirement System of New Jersey N.J.S.A. 43:15A-6 et seq. By virtue of his having been in public service for more than 50 years, including prior employment with the City of Trenton, his pension amounted to $1574.53 per month.
On September 16, 1974 Mount was indicted by a federal grand jury sitting in Newark. One count of the indictment charged him, as county engineer, with extorting the sum of *78 $8,000 from Barrett Paving Company, Inc., a contractor, during the period of 1968 through 1970, in violation of 18 U.S.C.A. §§ 1951 and 1952. In three additional counts it was alleged that he filed false income tax returns for the respective years of 1968, 1969, and 1970.
Upon becoming aware of the indictment, the secretary of the retirement system notified Mount by letter dated September 30, 1974 that since the indictment "leaves open the question of whether or not the retirement allowance which has been granted to you is based upon honorable service, a requisite for such retirement," his status would have to be reconsidered by the board of trustees; that it was "very possible" the board would suspend future pension payments pending the outcome of the indictment, and that should the board take that action he would be advised after the October 15 meeting.
There is no need to recount in detail the somewhat tangled procedural history thereafter. It is sufficient simply to note the filing of a verified complaint in Chancery Division of Superior Court seeking to enjoin the board of trustees from taking any action with respect to the pension payments until a final determination of the indictment, the denial of a temporary restraint by the Chancery Division judge, the filing of a motion for leave to appeal, and the application to us for a temporary stay pending the outcome of the motion. These matters all became moot when the board of trustees, at a hearing on October 29, 1974, at which Mount's counsel were present, voted to suspend the pension pending disposition of the criminal charges. An appeal as of right was filed from that determination. R. 2:2-3(a)(2). We heard the appeal on an accelerated basis pursuant to R. 2:9-2.
Appellant contends that (1) the procedure followed by the board violated due process in that the State was required to go beyond the indictment and present substantial evidence in support of the charges in order to justify any interruption of the pension payments; (2) he was entitled to be advised of the specific charges against him; (3) he was deprived of his Sixth Amendment right to confront and *79 cross-examine witnesses; (4) the indictment was not prima facie evidence of dishonorable service, and (5) the board had no authority to suspend the pension payments absent a conviction, and (6) public policy would not be served by the suspension. The response of the deputy attorney general is that (1) the board has authority to suspend pension payments pending termination of criminal proceedings against a pensioner for alleged offenses occurring during his employment which would constitute dishonorable service, and (2) the board's procedure conformed to the requirements of due process of law.
A public employee's pension rights and benefits are based upon and fall within the scope of a relevant pension statute. Feher v. Bd. of Trustees, Pub. Emp. Retirem. Syst., 68 N.J. Super. 391, 397 (App. Div. 1961). In this case the applicable statute is the Public Employees' Retirement System of New Jersey, N.J.S.A. 43:15A-6 et seq., which is administered by a board of trustees appointed pursuant to N.J.S.A. 43:15A-17.
It has been said that pensions to public officers are mere gratuities bestowed by the sovereign in recognition of previously rendered meritorious service. Watt v. Franklin Mayor and Council, 21 N.J. 274, 279 (1956). A "more modern concept" is that pensions are a form of delayed salary compensating the employee for faithful service. See Id., Salz v. State House Comm'n, 18 N.J. 106, 111-112 (1955); Bd. of Trustees, etc. v. Warren Cty. Bd. of Freeholders, 87 N.J. Super. 187, 194 (Law Div. 1965), aff'd 47 N.J. 132 (1966). However, in Spina v. Consol. Police, etc., Pension Fund Comm'n, 41 N.J. 391, 401 (1964), former Chief Justice Weintraub, writing for the court, stated that "[w]e think there is no profit in dealing in labels such as `gratuity,' `compensation,' `contract,' and `vested rights.' None fits precisely, and it would be a mistake to choose one and be driven by that choice to some inevitable consequence." He said further:
*80 Government's contribution to a pension fund has several facets. In part it compensates for services already rendered. It is also a reward for services to be rendered over the required minimum number of years, but the employee has no right to be continued in employment for enough years to earn it. In both respects the contribution seems compensatory, at least as of the time of eligibility for retirement. Yet it can be viewed also as noncompensatory payment to further the public employer's own interests, i.e., to permit the employer to release an aged servant who cannot decently be let out if he is unable to meet the necessities of life.

* * * * * * * *
As to the employee's contribution, it seems to be a sum already earned.

* * * * * * * *
In these circumstances, it seems idle to sum up either the public's or the employee's contribution in one crisp word. We have no doubt that pension benefits are not a gratuity within the constitutional ban against the donation of public moneys. * * * And we think the employee has a property interest in an existing fund which the State could not simply confiscate. * * * [at 401-402]
We see no compelling reason to delve further into the nature of a pension or the rights secured to the pensioner. It seems self-evident that a retirement allowance cannot arbitrarily be denied a public employee who qualifies therefor under an existing statutory system. See Ballurio v. Castellini, 29 N.J. Super. 383 (App. Div. 1954). A public employee qualifies for a pension upon satisfying three basic requirements: age, length of service, and honorable service. See Plunkett v. Hoboken Pension Comm'rs, 113 N.J.L. 230, 232-233 (Sup. Ct. 1934), aff'd 114 N.J.L. 273 (E. & A. 1935); Walter v. Trenton Police & Fire, etc., 120 N.J.L. 39 (Sup. Ct. 1938); Ballurio v. Castellini, supra; Hozer v. State, etc., Police & Firemen's Pension Fund, 95 N.J. Super. 196, 199-200 (App. Div. 1967), certif. den. 50 N.J. 285 (1967).
Honorable service is a sine qua non of the grant of a pension. Plunkett v. Hoboken Pension Commr's, supra, 113 N.J.L. at 232. It is that service which is characterized by or in accordance with principles of honor, and one so serving "is scrupulously upright, and shows a fine regard for obligations as to conduct." Id. at 233. A pension is an inducement *81 to conscientious, efficient and honorable service. Ballurio v. Castellini, supra, 29 N.J. Super. at 389; Fromm v. Bd. Directors of Police, etc., Retirem. Syst., 81 N.J. Super. 138, 142 (App. Div. 1963); Hozer v. State, etc., Police & Firemen's Pension Fund, supra, 95 N.J. Super. at 199. To bestow it upon one "whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency" and "burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed upon him." Walter v. Trenton Police & Fire, etc., supra, 120 N.J.L. at 42.
That the statute here involved does not by its terms make honorable service a condition precedent to the grant of a pension is of no consequence. It is settled law that such requirement is implicit therein. Ballurio v. Castellini, supra, 29 N.J. Super. at 389; Fromm v. Bd. Directors of Police, etc., Retirem. Syst., supra, 81 N.J. Super. at 142; and see, Pfitzinger v. Bd. of Trustees, etc., Retirem. Syst., 62 N.J. Super. 589, 598-599 (Law Div. 1960).
Unquestionably, if a public employee were convicted of the crimes which are the subject-matter of the indictment here, he would forfeit his claim to a pension. Where an intent to defraud is an essential element of an offense, as it is in the case of falsifying federal tax returns, moral turpitude is involved. Berardi v. Rutter, 42 N.J. Super. 39, 48 (App. Div. 1956), aff'd 23 N.J. 485 (1957). The crime of extortion is equally reprehensible, particularly where it entails misconduct in public office. Both charges are inconsistent with honorable service. Cf. Fromm v. Bd. Directors of Police, etc., Retirem. Syst., supra, 81 N.J. Super. at 144-145.
Thus, although a public employee has rendered honorable service for the length of years required for retirement and has attained the requisite age, nevertheless, if prior to retirement the employee is guilty of misconduct of a disqualifying character, his pension is forfeited. Plunkett v. Hoboken Pension Commr's, supra, 113 N.J.L. at *82 233-234. This is so because, as the court said in Ballurio v. Castellini, supra, the utility of the requirement for honorable service.
* * * would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefeasible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime. [at 389, of 29 N.J. Super.]
These policy considerations obtain even though a pension award has actually been made. It is neither final nor conclusive and is subject to reconsideration thereafter by the granting authority in an appropriate case. It is generally established that, in the absence of some legislative restriction, administrative agencies have the inherent power to reopen, modify or rehear orders that have been entered, provided that the power is exercised reasonably and with reasonable diligence. Ruvoldt v. Nolan, 63 N.J. 171, 183 (1973).
The applicability of such power to a pension award was recognized in McFeely v. Bd. of Pension Com'rs, 1 N.J. 212 (1948). In that case plaintiff, the police chief of Hoboken, was retired by the board of pension commissioners. Thereafter, the board, having been reconstituted as the result of a change of political control, rescinded the pension grant and declared the applicant unqualified because of indictments returned prior to the grant which accused the applicant of nonenforcement of the gambling laws and conspiracy to "oppress" and "persecute" other members of the police force. Although the rescission of the pension grant was set aside because the action was taken without affording a hearing and giving notice, the court said:
* * * [I]t is implicit in the statute that, in aid of the performance of their duty to determine the existence of the prerequisite condition of honorable service, these tribunals may, and in most cases should, certainly so where the offense charged involves moral turpitude, stay *83 action upon the pension claim awaiting the trial or other disposition of a pending indictment against the claimant; and, possessing as they do, in analogy to the authority of courts of general jurisdiction at common law, the inherent power of reconsideration, they may also, in the exercise of a sound discretion, vacate a pension grant and suspend further action on the claim until a pending indictment against the claimant is finally determined.
This power arises by necessary implication to serve the statutory policy. Inadvertent or premature or clearly erroneous action is not put beyond corrective measures by the tribunal itself * * * The exercise of the power is conditioned only upon the giving of reasonable notice to the parties and adequate opportunity to be heard, and the requirement that the action taken shall rest upon reasonable grounds and be in no sense arbitrary * * * [at 218].
We are aware that the factual setting in McFeely differs somewhat from that in the instant case. There indictments were actually pending when the pension application was approved. The grant, in such circumstances, was clearly premature and improvident and warranted the board's exercise of its inherent power to take requisite corrective action. In the present case, Mount had already been awarded a retirement allowance and was receiving his monthly installments when he was indicted and the quality of his prior service came under scrutiny as a result. Although we have found no reported case in this State which deals directly with this kind of situation, we cannot believe that the board would be powerless to act, for, if that were so, the effect would be to reward a transgressor whose misdeeds fortuitously do not come to light until after his retirement on pension.
The indictment of a public employee, whether before or after retirement, particularly where alleged misconduct in office is involved, casts a substantial shadow over the employee's right to a pension. The question of honorable service, an essential prerequisite to a pension, arises immediately. If the public employee is still in office, action on his pension application can properly be deferred until the disposition of the criminal charges. Ballurio v. Castellini, supra, 29 N.J. Super. at 394. Such action would undoubtedly have been taken in the present case had the allegations *84 of misconduct been made while the pension application was pending. Since no accusations were leveled against Mount at that time, the board was justified in assuming that his service had been honorable. But this is clearly not tantamount to a binding determination of that prerequisite. Except where there is a dispute over that issue and a resolution thereof, the board's approval of a pension application, as a matter of common sense, signifies no more than the absence of any indication of possible dishonorable service. We are convinced that the board in this case acted properly and diligently in questioning Mount's continued entitlement to his pension after learning of the indictment. The crucial question which remains for consideration is the propriety of the action taken, i.e., the suspension of pension payments pending the disposition of the indictment.
Founded upon the premises that he is presumptively innocent of any wrongdoing and the indictment is not prima facie evidence of dishonorable service, appellant advances the argument that his pension payments cannot be interrupted without a full evidentiary hearing at which the State would be obliged to present substantial evidence in support of the charges of misconduct. He contends further that without such hearing the board had no authority to suspend his pension payments prior to conviction. In our view, neither assertion is sound.
We are not concerned here with whether the indictment, standing alone, may support a revocation of the pension grant. The board's purpose was only to suspend further payments pending resolution of the criminal charges. In Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), the court said:
An indictment of course is not proof of its own allegations in the criminal trial itself, see State v. Orecchio, 16 N.J. 125 (1954). In the criminal trial, the indictment is the very charge to be made out, and it would deny the accused's right of confrontation to give the indictment any evidential value whatever. But this is not to say that *85 an indictment is nothing at all, even within the criminal process. The indictment will suffice to warrant the arrest of the accused and to hold him to or even without bail. For an indictment, far from being a mere allegation, constitutes a finding by a grand jury that a basis exists for subjecting the accused to a trial, with the intermediate restraints upon his freedom we just mentioned.

* * * * * * * *
An indictment, State or Federal, is hardly a neutral fact for all purposes. In the area of our present concern, it cannot be said that an indictment has no meaning. On the contrary, the indictment means that a basis exists to believe the charge if the evidence on hand is not explained or contradicted. * * * [at 487-488]
Applying the above concept to the case before us, the indictment here represents a prima facie basis for a belief that the pensioner's prior service may have been dishonorable, thereby, if the charges are proven true, forfeiting his right to the pension. In such case Trap Rock Industries, Inc. v. Kohl, supra at 488, teaches us that there are but two alternatives: a suspension pending the resolution of the criminal charge or an immediate trial before the board of the issue of dishonorable service. The latter course, which would be in effect be a trial of the offenses alleged in the indictment, is neither appropriate nor feasible. The board is simply not equipped for that purpose. The evidence might not be available to it, and, if it were, the right to a fair trial in the criminal case might be infringed by the prior trial and decision in the administrative hearing. Trap Rock Industries, Inc. v. Kohl, supra.
Appellant's reliance upon Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), is misplaced, since that case holds that welfare benefits to which a recipient is entitled cannot be terminated without a pre-termination evidentiary hearing. The issue of suspension was not involved therein.
There seems to be no reasonable or practical ground why the procedure of suspension ought not to be available to the board. The power of suspension is by no means uncommon. The implied power in the State and its subdivisions to suspend its employees or officers pending *86 disposition of indictments or other charges where the public interest so requires has long been recognized. Trap Rock Industries v. Kohl, supra, 59 N.J. at 489. Admittedly, once a pension is granted the grantee can be expected to place some reliance on the money he is to receive. But reliance is insufficient, for example, to prevent the termination of a pension. McFeely v. Board of Pension Com'rs, supra. It is readily apparent that every pension application and every pension grant is subject, as the case may be, either to a deferral of further action or reconsideration if facts become known which bear on the issue of honorable service. To require the board, in cases where pensions have been granted, to wait the disposition of criminal charges before proceeding further is, we think, inappropriate. The board of trustees are fiduciaries and therefore have a duty to protect the fund and the interests of all beneficiaries thereof. They must exercise due care, diligence and skill in administering the trust. 54 Am. Jur., Trusts, § 321 at 255. It would not serve the statutory policy to pay out moneys to those not entitled thereto. If the board were compelled to continue pension payments until the issue of guilt or innocence is determined in the criminal proceedings, it would then be obligated to recoup the funds theretofore paid to a pensioner found guilty of a charge which establishes prior dishonorable service. The likelihood of reimbursement in such case is highly problematical. The suspension of payments pending the outcome of the criminal case will be at least permit the board to retain and thereby preserve the moneys which would otherwise have been expended. If the grantee is exonerated, he will be paid what is due him. Upon balancing the statutory policy of safeguarding pension funds against the temporary economic hardship suffered by a pensioner under indictment who is later acquitted, we are convinced that the latter must give way to the former.
Of course, the board cannot suspend a pension without notifying the pensioner and affording him an opportunity to be heard. But, as we indicated earlier herein, *87 a full evidentiary hearing of the type urged by appellant is not required unless revocation of the pension is sought. The presentation of the indictment, if that is the reason for the proposed action, is, in our view, a sufficient prima facie basis for suspension where, as here, the indictment on its face charges offenses which, if true, would denote dishonorable service prior to retirement. The pensioner may, if he wishes, seek to establish that the charges, even if true, occurred outside his public trust or that they do not amount to dishonorable service. To the extent petitioner considers that his right to a fair criminal trial would not be infringed thereby, he may also come forward and explain or contradict the charges; or he may show, if he can, that it would not disserve the public interest to continue the pension payments notwithstanding the indictment. See Trap Rock Industries, Inc. v. Kohl, supra.
We have carefully examined the record in the case before us and conclude that the board correctly suspended appellant's pension payments pending the disposition of the indictment. A valid basis existed for the suspension and, moreover, the requirements of due process of law were satisfied. At the meeting of October 29, 1974 the deputy attorney general offered into evidence a copy of the indictment and reserved the right, if necessary, to present further evidence at the close of such case as might be presented by Mount's attorneys. The latter, though accorded the right to do so, presented no facts, choosing, instead, merely to argue in opposition to the legal contentions advanced by the deputy attorney general and to challenge the board's power to suspend the pension payments.
In passing we note briefly that Mount has recently been examined by two physicians selected by the United States District Court for the purpose of determining whether he is mentally competent to stand trial. We are informed that the physicians have advised the court that although Mount could probably understand the nature of the proceedings against him, he was not mentally competent to assist in his *88 own defense. It also appears that a motion will soon be made in the District Court to have Mount judicially declared incompetent to stand trial, and it is anticipated that the matter would probably then be placed on the inactive list. These developments have no bearing on our consideration of the issues now before us. If counsel are of the view that the suspension might be affected thereby, they are at liberty to bring the facts to the attention of the board at the proper time with a request for reconsideration of the suspension.
Affirmed.
BISCHOFF, J.A.D. (dissenting).
I agree with the majority holding that where a retired public employee receiving a pension under a retirement system is thereafter indicted for offenses allegedly committed during his employment, the trustees of the retirement system may, upon notice and after a hearing, suspend further pension payments pending determination of the indictment. I am, however, compelled to dissent from the conclusion that the proceedings of October 29, 1974 constituted a hearing upon which the trustees could base a suspension of plaintiff's pension payments.
The proceedings on that date consisted of the reading of the federal indictment into the record, after which the State rested. Plaintiff did not present any evidence but noted that a plea of not guilty to the indictment had been entered. After hearing legal arguments the trustees voted to suspend further pension payments to plaintiff. In reaching the conclusion that such a proceeding complied with due process requirements, the majority places heavy reliance on the case of Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). I believe basic factual differences make that decision inapposite.
The only issue involved in that case was whether the suspension of the asserted privilege of a corporation to submit *89 bids for work to be performed for the State Department of Transportation was proper. Trap Rock Industries had been suspended from bidding on contracts to be awarded by that department for the reason that Michael J. Stavola, president, chairman of the board of directors and principal stockholder of the corporation, had been indicted for bribery. At a hearing afforded the corporation on the suspension the indictment was placed in evidence and the plea of not guilty noted on the record. The corporation thereafter declined to offer any testimony and refused to consent to an examination of the grand jury testimony. The Supreme Court held that the hearing did not violate basic principles of due process and the suspension was affirmed. However, it was specifically noted that the right of the corporation to do business with others was in no way abridged.
Without attempting to place a label on plaintiff's interest in the retirement fund as either a "vested right" or a "contractual right," Spina v. Consol. Police, etc., Pension Fund Comm'n, 41 N.J. 391, 401 (1964), the following pertinent facts should be noted.
It is conceded that plaintiff meets the statutory requirements for a pension of age (69 years) and years of service (50 years), and throughout his years of service he made the necessary monetary contributions to the pension fund.
The majority states that the trustees have a fiduciary duty to protect the fund and all beneficiaries thereof. That is unquestionably so, but it applies to both granting as well as suspending a pension. The trust fund theory espoused by the majority is equally applicable to both situations. It is reasonable to assume that the duty of exercising due care, diligence and skill imposed on the trustees in the management of the fund was undertaken by them prior to granting plaintiff a pension and a determination made that his service was honorable. This administrative determination is entitled to a presumption of validity. Elizabeth v. Sullivan, 125 N.J. Super. 569, 574 (App. Div. 1973).
*90 The majority opinion, citing the Trap Rock Industries case, concludes that the proceeding of October 29 met necessary due process requirements because plaintiff was afforded an opportunity to establish that the charges, if true, occurred outside of his public service or were not dishonorable in nature, and he could explain or contradict the charges if he desired to do so.
Such a conclusion, fully justified in the Trap Rock Industries case, is totally inapplicable here. That case involved a corporation possessing no right against self-incrimination. N.J. Builders, etc. v. Blair, 60 N.J. 330, 340-341 (1972); Weehawken Tp. Bd. of Health v. N.Y. Central R.R., 10 N.J. 284 (1952).
The suggestion that plaintiff come forward with some explanation or contradiction if he is to continue to receive pension payments and obtain funds needed for his very existence and required medical attention, at the very least places a chilling effect on the exercise of his constitutional privilege against self-incrimination.
Plaintiff has pleaded not guilty to the indictment. It is difficult to see how he could otherwise contradict naked charges without any facts having been produced to support them. So, too, it is difficult to envision what type of explanation could be offered in the absence of evidence tending to demonstrate wrongdoing, fault or dishonorable service on his part. To shift to plaintiff the burden of coming forward with evidence when none has been presented against him does violence to basic principles of fundamental fair play.
The conclusion of the majority, anchored as it is only in the uncertainties of an indictment, tramples underfoot the presumption of innocence. Neither a single witness nor a shred of evidence has been presented to question the finding of "honorable service" which was a sina qua non of his pension award.
In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that a recipient *91 of welfare benefits was entitled to an evidentiary hearing before benefits could be terminated. The court noted (at 262, n. 8, 90 S.Ct. at 1017), that society today is structured around many entitlements, the most important of which now flow from the government. One of those referred to was "pension rights."
That court mentioned (at 263, n. 10, 90 S.Ct. at 1018) a variety of circumstances where summary action is justified. However, the illustrations there noted, where such action is permitted, are far different from the situation now before us.
The majority opinion brushes aside the case of Goldberg v. Kelly as inapposite because it dealt with termination rather than suspension of benefits. From a practical standpoint it makes little difference to plaintiff whether his pension benefits are suspended until trial or terminated. Trial may not be held for years. The record discloses that plaintiff is in poor health and, as the majority notes, there exists a serious question as to when, if ever, he will be able to assist in the preparation of his case for trial. Moreover, the court in Trap Rock Industries considered the case of Goldberg v. Kelly and, in holding it inapplicable, did not rely on any difference between suspension and termination but did recognize a deep-seated distinction between a "blacklisted contractor" on the one hand and the "extreme need of the individual" on the other. This distinction, our Supreme Court noted, was sufficient to require an evidentiary pre-termination hearing before a determination of "continued welfare eligibility" could properly be made. Trap Rock Industries, Inc. v. Kohl, supra, 59 N.J. at 492. Reasons mandating an evidentiary hearing in determining "continued welfare eligibility" apply as well to a situation where "continued pension eligibility" is involved.
Even though due recognition is given to the principle that courts are sensitive to policy considerations related to diversion of public funds for statutorily unwarranted pensions, Ruvoldt v. Nolan, 63 N.J. 171, 185 (1973), and to the further *92 principle that illegal depletion of pension trust funds is not to be countenanced on the principle of an estoppel based on administrative error in the original grant of a pension, Tubridy v. Consolidated, etc., Pension Comm'n, 84 N.J. Super. 257, 263 (App. Div. 1964), still a suspension should not be based on a silent record. If the conclusion that an evidentiary hearing is required before suspension is accepted, then it follows that while an indicted person is subject to certain adverse consequences within the criminal process which flow from the act of the grand jury, Trap Rock Industries, Inc. v. Kohl, supra, 59 N.J. at 487, the indictment itself has no evidentiary value. It does not establish the truth of the charges nor the presence of sufficient legal proof thereof. It proves nothing and does not in any degree deprive an accused of the presumption of innocence. State v. Orecchio, 16 N.J. 125, 132 (1954). Apart from the indictment, nothing is present in the record to support the action of the suspension.
In my opinion plaintiff has not been afforded the hearing to which the majority agrees he is entitled. It follows that the suspension of pension payments, under the circumstances here present, constitutes a violation of due process and basic principles of fundamental fairness.
I would reverse.