IN RE: INQUIRY CONCERNING A JUDGE, NO. 74 J. WILTON HUNT, SR., RESPONDENT

No. 62A83

(Filed 3 May 1983)

1. **Judges § 7— jurisdiction over misconduct charges—subsequent resignation of judge**

    The Judicial Standards Commission and the Supreme Court acquired jurisdiction over a district court judge and the charges against him when the Commission filed its complaint against the judge, and such jurisdiction was not divested by the judge's resignation after the complaint was filed.

2. **Judges § 7— action to remove judge—other sanctions—resignation of judge—mootness**

    A proceeding before the Judicial Standards Commission to remove a district court judge from office was not rendered moot by the judge's resignation from office since the remedies against a judge who engages in serious misconduct justifying his removal include not only loss of present office but also disqualification from future judicial office and loss of retirement benefits.

3. **Judges § 7— willful misconduct in office—accepting bribes—removal from office**

    Each act of a district court judge in accepting cash bribes in exchange for his promise to use his judicial office to protect criminal activities constituted a

separate act of willful misconduct in office, and the persistent and repeated nature of these acts by the judge also represented a course of conduct prejudicial to the administration of justice to such an extreme degree as to comprise a separate act of willful misconduct in office. Since such acts of willful misconduct involved personal financial gain, moral turpitude and corruption, they required that the judge be removed from judicial office and that he be disqualified from receiving retirement benefits and holding further judicial office. G.S. 7A-376.

PROCEEDING before the Supreme Court upon the recommendation of the North Carolina Judicial Standards Commission that the respondent, J. Wilton Hunt, Sr., a judge of the General Court of Justice, District Court Division, Thirteenth Judicial District, be removed from office as provided in G.S. 7A-376.

*Special Deputy Attorney General Lester V. Chalmers, Jr., for Judicial Standards Commission.*

*Frink, Foy and Gainey, by A. H. Gainey, Jr., for respondent.*

MITCHELL, Justice.

The issues raised before the Supreme Court by the recommendation of the North Carolina Judicial Standards Commission [hereinafter "Commission"] concern whether certain conduct by the respondent, Judge J. Wilton Hunt, Sr., is willful misconduct in office under the terms of G.S. 7A-376 which justifies his removal from office and the resulting statutory disqualification from receiving retirement benefits and holding further judicial office. By this opinion, we adjudge that the respondent's conduct constitutes willful misconduct in office and order his removal from office as a judge together with the resulting statutorily mandated disqualifications.

On 17 September 1982 the Commission, in accordance with its Rule 7 (J.S.C. Rule 7) notified the respondent that on its own motion it had ordered a preliminary investigation to determine whether formal proceedings should be instituted against him under J.S.C. Rule 8. The notice informed Judge Hunt that the scope of the investigation would include *inter alia* allegations that he had accepted money on several occasions in exchange for his assistance in protecting illegal gambling and drug smuggling activities. On 22 September 1982, Special Deputy Attorney General Lester V. Chalmers, Jr., acting as Special Counsel to the Commis-

sion, filed a complaint against the respondent with the Commission which alleged *inter alia* the following:

3. That the respondent received as bribes the amounts of money on or about the dates and from the persons specified and designated below:

(a) $1,000.00 on or about 3 December 1980 from Federal Bureau of Investigation special agent William Redden;

(b) $1,500.00 on or about 26 January 1981 from Federal Bureau of Investigation special agent William Redden;

(c) $1,000.00 on or about 24 February 1981 from Federal Bureau of Investigation special agent Robert Joseph Drdak;

(d) $2,000.00 on or about 22 June 1981 from Federal Bureau of Investigation special agent Robert Joseph Drdak; and

(e) $1,500.00 on or about 22 September 1981 from Federal Bureau of Investigation special agent Robert Joseph Drdak.

The Commission notified Judge Hunt on 22 September 1982 that it had concluded that formal proceedings should be instituted against him, upon evidence developed by the preliminary investigation, for willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. A copy of the complaint filed by Special Counsel Chalmers was attached to this notice which was hand delivered to the respondent on 22 September 1982 by Cale K. Burgess, Jr., an investigator for the Commission. The respondent filed an answer on 8 October 1982 denying the substantive allegations of the complaint.

After proper notice to all parties, the Commission convened a hearing on 4 January 1983 concerning the charges alleged in the complaint. The respondent was present and represented by counsel at the hearing. During the hearing before the Commission, evidence was offered against the respondent in the form of the testimony of witnesses and the introduction of exhibits including video tapes made by federal law enforcement officers in which it was contended Judge Hunt was portrayed in the act of receiving some of the bribes alleged in the complaint. The re-

spondent offered no evidence and, upon advice of counsel, elected to stand mute for purposes of the hearing.

On 25 January 1983, after reciting the jurisdictional facts and chronology of proceedings prior to the hearing, the Commission found facts and made conclusions of law and a recommendation to this Court as follows:

9. At the hearing evidence was presented by Special Counsel for the Commission but no evidence was presented by Counsel for the respondent, and having heard the evidence presented by Special Counsel for the Commission and having observed the demeanor and determined the credibility of the witnesses, the Judicial Standards Commission found, upon clear and convincing evidence, the following facts:

During the period of time from 23 October 1980 to and including 20 November 1980, the respondent conversed with one James E. Carroll, operator of the Roxann Lounge in Whiteville, North Carolina, concerning the interest of a group of investors represented by William L. Redden, Jr., a Federal Bureau of Investigation special agent known to respondent and Carroll only as Bill Leonard, in purchasing the Roxann Lounge. During these conversations, Carroll advised the respondent of Redden's interest in purchasing the Roxann Lounge and his need to have protection for the operation of the lounge because the activities of the lounge would include running a private poker game. Carroll also advised the respondent that money for assistance in protecting the operation would be no problem. The respondent indicated to Carroll that he would assist in protecting the operation.

On 20 November 1980 the respondent met Redden in Whiteville at which time Redden told the respondent of his clients' interest in purchasing the Roxann Lounge and their interest in running a private poker game on the premises.

On 3 December 1980 the respondent met with Redden and Carroll outside the Hide-Away Grill in Whiteville. During this meeting, respondent agreed to do whatever he could to help Redden to protect the operation of the Roxann Lounge, and the payment of $1,500 a month to the respondent for his

assistance in protecting the operation was discussed. On this occasion the respondent received $1,000 from Redden through Carroll as a show of good faith by Redden who indicated that the amount would be increased to $1,500 once the operation was in place.

On 22 December 1980 the respondent accepted $500 from Carroll who had been given the money by Redden for delivery to the respondent.

On 26 January 1981 the respondent invited Redden and Carroll to his residence at which time the respondent received $1,500 from Redden and assured Redden that he would take care of Redden's people.

On 19 February 1981 Joseph Thomas Moody, an informant for the Federal Bureau of Investigation, received two citations to appear in District Court in Whiteville on 25 March 1981 on charges of driving under the influence of intoxicating liquor, speeding 68 m.p.h. in a 55 m.p.h. zone, and driving while his chauffeur's license was revoked.

On 24 February 1981 the respondent met Robert Joseph Drdak, a Federal Bureau of Investigation special agent known to the respondent only as an associate of Redden named Thomas "Doc" Ryan, Carroll, and Moody, known to the respondent as an associate of Drdak and not as an informant, at his residence. During this meeting, the drug operation in which the respondent believed Drdak to be involved was discussed as well as the respondent's willingness to assist Drdak and others involved in such an operation with court matters such as bond hearings by setting low bonds or reducing bonds. The respondent specifically discussed Moody's upcoming cases, and the respondent indicated that he could and would give Moody favorable consideration in court perhaps by granting Moody a prayer for judgment continued. On this occasion the respondent accepted $1,000 from Drdak as a partial payment for the respondent's assistance with Moody's cases and other such things.

The respondent presided over the 25 March 1981 session of Columbus County District Criminal Court in Whiteville at which the cases of *State of North Carolina v. Joseph Thomas*

*Moody,* Columbus County file numbers 81CR1695 and 81CR1696, were calendared for trial. Upon defendant Moody's pleas of not guilty to speeding 68 m.p.h. in a 55 m.p.h. zone and driving while his chauffeur's license was revoked, the respondent found defendant Moody not guilty of those charges and guilty of exceeding safe speed and no operator's license. The respondent consolidated the two cases for judgment and signed a judgment granting defendant Moody a prayer for judgment continued on payment of costs of court.

On 30 March 1981 the respondent met Drdak and Jerry A. King, a Federal Bureau of Investigation special agent known to the respondent only as an associate of Drdak named Jerry Richardson, at his residence at which time the respondent accepted $1,500 from Drdak and acknowledged that his action in the Moody cases was his job. During this meeting, the respondent was advised of Drdak's desire to open a precious metals business and his concern about any delay in obtaining a business license from the Columbus County Board of Commissioners. Prior to the conclusion of the meeting, the respondent offered to and did telephone Ed Walton Williamson, Chairman of the Columbus County Board of Commissioners, and Jim Hill, Columbus County Attorney, and requested their assistance in expediting Drdak's application for a business license. Upon completion of the telephone calls, the respondent advised Drdak to meet Williamson the following day at Williamson's office.

On 31 March 1981 Drdak went to the office of the Chairman of the Columbus County Board of Commissioners at which time he met Ed Walton Williamson and received his license to operate a precious metals business.

On 22 June 1981 the respondent met Drdak at Drdak's apartment at 24 Jamestown Square in Whiteville at which time the drug operation in which the respondent believed Drdak to be involved was discussed and at which time the respondent accepted $2,000 from Drdak to help make up for any arrearages in the $1,500 a month payment amount.

On 14 September 1981 Bradley D. Hoferkamp, a Federal Bureau of Investigation special agent known to the respondent only as an associate of Drdak named Bradley David

Henderson, was cited to appear in District Court in Whiteville on 13 October 1981 on a charge of speeding 71 m.p.h. in a 55 m.p.h. zone.

On 22 September 1981 the respondent met Drdak at 24 Jamestown Square in Whiteville at which time the respondent accepted $1,500 from Drdak and was advised of the speeding ticket received by Hoferkamp. During the conversation, the respondent requested and received information from Drdak regarding Hoferkamp's ticket and indicated he would have the matter continued until he could handle it.

On several occasions during the period of time from 22 September 1981 to and including 9 November 1981, the respondent discussed Hoferkamp's ticket with both Drdak and Hoferkamp and repeatedly assured them that he would take care of the case.

On 9 November 1981 the respondent discussed Hoferkamp's ticket with Drdak by telephone and indicated to Drdak during the conversation that he would take care of Hoferkamp's case the following day, that Hoferkamp would be found guilty of having improper equipment rather than speeding 71 m.p.h. in a 55 m.p.h. zone, and that Hoferkamp need not be in court.

The respondent presided over the 10 November 1981 session of Columbus County District Criminal Court in Whiteville at which the case of *State of North Carolina v. Bradley David Henderson,* Columbus County file number 81CR8889, was calendared for trial after having been continued from 13 October 1981 to 27 October 1981 and from 27 October 1981 to 10 November 1981. Notwithstanding defendant Hoferkamp's absence from the courtroom on 10 November 1981, the respondent found defendant Hoferkamp not guilty of speeding 71 m.p.h. in a 55 m.p.h. zone and guilty of improper equipment, and the respondent signed a judgment imposing costs of court which were remitted.

During the period of time from 20 November 1980 to and including 10 November 1981, the respondent accepted a total of $9,000 from Redden, either directly or through Carroll, and Drdak. The respondent never refused to accept such money

when offered to him and never returned or attempted to return such money once he had accepted it.

10. The findings hereinbefore stated and the conclusion of law and recommendation which follow were concurred in by five (5) or more members of the Judicial Standards Commission.

## CONCLUSION OF LAW

11. As to the facts set forth in paragraph 9, the Judicial Standards Commission concludes on the basis of clear and convincing evidence that the actions of the respondent constitute willful abuse of the power and prestige of his judicial office by consenting to receive and receiving sums of money not in payment of a legal salary, fee, or perquisite of his office as a district court judge with the corrupt intent and understanding that said sums were to influence his action in the performance of or the omission to perform his duties as an officer of the court and a public official in violation of the laws of the State and his oath of office; and the Commission further concludes that his actions constitute willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute and his actions violate Canons 1, 2, and 3 of the North Carolina Code of Judicial Conduct.

## RECOMMENDATION

12. The Judicial Standards Commission recommends on the basis of the findings of fact in paragraph 9 and the conclusion of law relating thereto that the Supreme Court of North Carolina remove the respondent from judicial office.

By Order of the Commission, this the 25th day of January, 1983.

s/Gerald Arnold
Gerald Arnold
Chairman
Judicial Standards Commission

(SEAL)

The Commission's findings, conclusions and recommendation were personally served upon the respondent on 25 January 1983. The findings of fact, conclusions of law and recommendation of the Commission were filed with this Court on 7 February 1983.

On 21 February 1983, the respondent filed a petition in the Supreme Court for a hearing upon the Commission's recommendation that he be removed from office. The matter was duly docketed with both the Commission and the respondent being given the opportunity to file briefs and present oral arguments. On 3 March 1983, Judge Hunt tendered his resignation from office as a District Court Judge to the Governor with the resignation to be effective immediately. On 4 March 1983, His Excellency, Governor James Baxter Hunt, Jr., accepted the resignation effective 3 March 1983.

Counsel for the respondent indicated to this Court by letter dated 4 March 1983 that the respondent no longer wished to pursue his petition for hearing by the presentation of briefs or oral arguments. In view of this decision by the respondent, the Special Counsel for the Commission declined the opportunity to present an oral argument or brief. Therefore, we now proceed pursuant to applicable law to determine the issues before us.

[1] We first note that the resignation of Judge Hunt from his office as a judge did not deprive the Commission or this Court of jurisdiction. Prior to Judge Hunt's resignation, the Commission had notified him that formal proceedings had been instituted against him and advised him of his rights. The respondent was personally served with that notice together with a copy of the verified complaint which specified the charges against him. Therefore, the Commission and this Court had jurisdiction over the respondent and the charges against him prior to his resignation. *In re Peoples*, 296 N.C. 109, 250 S.E. 2d 890 (1978), *cert. denied*, 442 U.S. 929, 61 L.Ed. 2d 297, 99 S.Ct. 2859 (1979). As we have previously stated: "Under G.S. 7A-376 there is but one disciplinary proceeding. It began when the Commission filed its complaint, and it will end with this Court's final order." *Id.*, at 146-47, 250 S.E. 2d at 912. The Commission and this Court having acquired jurisdiction over the respondent and the charges against him before he left office, such jurisdiction was not and could not be divested by reason of the respondent's resignation from his

judicial office. Both the Commission and this Court retained jurisdiction.

**[2]** We additionally note that the issues raised in this disciplinary proceeding have not become moot by reason of Judge Hunt's resignation.

> If G.S. 7A-376 limited the sanctions for wilful misconduct in office to censure or removal, Respondent's resignation would have rendered the proceedings moot. The statute, however, envisions not one but three remedies against a judge who engages in serious misconduct justifying his removal: loss of present office, disqualification from future judicial office, and a loss of retirement benefits. Only the first of these was rendered moot by Respondent's resignation.

*In re Peoples*, 296 N.C. at 150, 250 S.E. 2d at 914. We are still required to decide whether Judge Hunt's conduct merited his removal from office in order to determine whether these additional sanctions are to be imposed. Our duty to resolve this issue is in no way affected by his resignation. *Id.*

**[3]** We now turn to the question of whether the evidence introduced before the Commission with regard to Judge Hunt's conduct establishes his willful misconduct in office, conduct prejudicial to the administration of justice, or both, and if so, whether he should be removed or censured. In addressing this question, we must, of course, review the record and exhibits filed with this Court as a part of this proceeding.

We conclude that the Commission's findings of fact are supported by the "clear and convincing evidence" required to sustain them. *In re Peoples*, 296 N.C. at 151, 250 S.E. 2d at 914; *In re Nowell*, 293 N.C. 235, 237 S.E. 2d 246 (1977). This evidence included the testimony of various witnesses as well as video tapes tending to corroborate certain of the witnesses and purporting to show Judge Hunt actually accepting money in exchange for his agreement to use his judicial office to protect criminal activities. We accept the Commission's findings and adopt them as our own.

We have previously attempted to draw a distinction between "willful misconduct in office" and "conduct prejudicial to the administration of justice." In so doing, we stated that: "A judge should be removed from office and disqualified from holding fur-

ther judicial office only for the more serious offense of wilful misconduct in office." *In re Peoples,* 296 N.C. at 158, 250 S.E. 2d at 918. We have also indicated, however, that conduct prejudicial to the administration of justice, if knowingly and persistently repeated, would itself rise to the level of willful misconduct in office, which is a constitutional ground for impeachment and disqualification for public office. *See In re Peoples,* 296 N.C. at 157-58, 250 S.E. 2d at 918. No close analysis is required for us to determine that each of Judge Hunt's acts of accepting cash bribes in exchange for his promise to use his judicial office to protect criminal activities is a separate act of willful misconduct in office. Further, the persistent and repeated nature of these acts by Judge Hunt also represents a course of conduct prejudicial to the administration of justice to such an extreme degree as to comprise a separate act of willful misconduct in office.

Having determined that the acts we have found Judge Hunt committed constitute willful misconduct in office, we must decide whether this Court should remove or censure him. We have previously stated that: "Certainly where a judge's misconduct involves personal financial gain, moral turpitude or corruption, he should be removed from office." *In re Martin,* 295 N.C. 291, 305, 245 S.E. 2d 766, 775 (1978). Judge Hunt's acts in accepting cash bribes in exchange for his promises to use his judicial office to protect criminal activities obviously was exactly such judicial misconduct. We therefore conclude that Judge Hunt's willful misconduct in his judicial office requires that we officially remove him from that office.

For the reasons set forth in this opinion, it is adjudged that the respondent, J. Wilton Hunt, Sr., is guilty of willful misconduct in office. It is ordered by the Supreme Court of North Carolina, in conference, that the respondent, J. Wilton Hunt, Sr. be, and he is hereby, officially removed from office as a judge of the General Court of Justice, District Court Division, Thirteenth Judicial District, for his willful misconduct in office specified in the findings of fact made by the North Carolina Judicial Standards Commission, which findings the Court has adopted as its own. As a consequence of his removal from office, the respondent, J. Wilton Hunt, Sr., is disqualified by statute (G.S. 7A-376) from holding further judicial office and is ineligible for retirement benefits.