In the Matter of the Commission on Judicial Tenure and Discipline Proceedings against Justice Antonio S. ALMEIDA.

No. 91–687–M.P.

Supreme Court of Rhode Island. .

June 15, 1992.

**1376**

Alan Goulart, Sp. Asst. Atty. Gen., Robert W. Lovegreen, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

Thomas C. Angelone, Hodosh, Spinella & Angelone, Providence, for defendant.

OPINION

FAY, Chief Justice.

This case came before this court pursuant to a petition by Mr. Justice Antonio S. Almeida (petitioner), requesting this court to reject the recommendation of the Commission on Judicial Tenure and Discipline (commission) that this court terminate the petitioner's pension benefits retroactive to the date of his retirement and order him to repay those pension payments previously made. The petitioner challenges the commission's authority to recommend termination of the pension he was receiving pursuant to G.L.1956 (1985 Reenactment) § 8-3-8, as amended by P.L.1988, ch. 639, § 1, and also challenges the authority of this court to terminate the pension. The petitioner further contends that the termination of the petitioner's pension rights is a disproportionate penalty in violation of article 1, section 8, of the Rhode Island Constitution. Within our inherent power to supervise the courts, we hereby terminate the petitioner's pension as of April 6, 1992, the date this court issued its order. Honorable service is a necessary prerequisite in all areas of public service and for the vesting of pension rights. Because the petitioner failed to comply with this prerequisite by his commission of acts violative of both ethical-conduct standards and the public trust, he has consequently forfeited his right to receive pension benefits from the State of Rhode Island. We therefore deny the petitioner's request and terminate his pension as of April 6, 1992. The relevant facts are as follows.

The petitioner served as an associate justice of the District Court from 1969 to 1980 and was appointed as an associate justice to the Superior Court in May 1980. On February 22, 1991, petitioner retired and thereafter served as an active retired jus-

tice in accordance with the statutory provision set out in § 8–3–8. Section 8–3–8 provides in pertinent part:

"Retirement of justices on full pay—Assignment as associate justices.—(a) Whenever any person shall have served as a justice of the supreme court, the superior court, the family court, the district court, or any of them for twenty (20) years and has reached the age of sixty-five (65) years, or has served for fifteen (15) years, and reached the age of seventy (70) years, said justice may retire from regular active service and thereafter said justice shall receive annually during his or her life a sum equal to the annual salary said justice was receiving at the time of his or her retirement."

At the time of his retirement, petitioner was sixty-six years of age and had served as a justice for over twenty years. The petitioner thereafter began to receive a yearly pension of $97,904, equivalent to the yearly salary he was receiving at the time of his retirement. Because the pension plan in effect for petitioner was noncontributory, he had not paid into the pension fund and his pension payments were to be paid out of the judicial-salary funds of the State of Rhode Island.[1]

In March 1991 the commission, empowered to investigate violations of judicial ethics and to issue recommendations to this court, commenced an investigation into petitioner's alleged judicial misconduct, after receiving a complaint concerning his improper activity. Pursuant to G.L.1956 (1985 Reenactment) § 8–16–4(c), as amended by P.L.1991, ch. 205, § 2, the commission filed its notice of investigation, nature of charges, and public hearing. Because petitioner did not respond to or contest the commission's allegations of misconduct, these allegations were therefore admitted pursuant to § 8–16–4(c). After further discovery and investigation, the commission

issued its findings, conclusions, and recommendations in a report pursuant to § 8–16–5, as amended by P.L.1987, ch. 492, § 1, and certified that report in order for this court to review its recommendations and to determine the proper remedial action.

The commission found the following facts to be true and accurate.

"1. During the year 1988, Mr. Justice Almeida entered into an arrangement with Attorney Thomas Hutton wherein said Justice agreed to appoint Mr. Hutton to serve as a receiver, special master or similar position in cases pending before said Justice and, in return, to be paid a portion of the legal fees generated by the appointment and received by said attorney.

"2. The division of the legal fees approximated twenty-five (25%) percent to the Justice and seventy-five (75%) percent to the attorney.

"3. Said Justice received approximately twenty (20) payments under this arrangement from the attorney.

"4. Said Justice received approximately Forty Thousand ($40,000.00) Dollars under this arrangement.

"5. Additionally, on at least one occasion, the attorney paid for work performed at the said Justice's personal residence.

"6. Said Justice held telephone conversations with the attorney on July 17, and 18, 1991 during which said Justice was advised that distributions were to be made in one of the cases included in the previously mentioned arrangement.

"7. On July 21, 1991, said Justice met with the attorney at a local restaurant and received from the attorney One Thousand Five Hundred ($1,500.00) Dollars as part of the previously mentioned arrangements.

---

1. General Laws 1956 (1985 Reenactment) § 8–3–16, as amended by P.L.1990, ch. 507, § 1 now provides that "Judges engaged after December 31, 1989 shall have deducted from total salary beginning December 31, 1989 an amount equal

to a rate percent of compensation as specified in § 36–10–1." General Laws 1956 (1990 Reenactment) § 36–10–1 sets out the applicable percentages for member contributions into the retirement system.

"8. Said Justice received money from the attorney which money was a portion of the legal fee to the attorney in the *Paul K. Sherman* case.

"9. Said justice failed to notify all counsel of record in the matter of *State v. Hall, Sundel and Nelson,* K2/81–0478 that during the pendency of that matter said Justice had business dealings commenced by an attorney of record in that matter thereby incurring or appearing to incur an obligation to that attorney or obtained a favor from that attorney.

"10. Said justice had business dealings with a criminal defendant in *State v. Hall, Sundel and Nelson,* on which matter said Justice sat and made rulings.

"11. Said Justice was informed that a criminal defendant in *State v. Hall, Sundel and Nelson* was asserting that he 'bought' said Justice yet no action was taken by said Justice to deny or discourage that statement."

**2.** Rule 48 of the Canons of Judicial Ethics states in pertinent part:

"4. Avoidance of Impropriety.—A judge's official conduct should be free from impropriety and the appearance of impropriety. A judge should avoid infractions of law. A judge's personal behavior, not only upon the bench and in the performance of his judicial duties, but also in his every day life, should be beyond reproach.

\* \* \*

"10. Judicial Appointees and Their Compensation.—(A) Trustees, receivers, masters, referees, guardians, appraisers and other persons appointed by a judge to aid in the administration of justice should be selected with a view solely to their character and fitness. The power of making such appointments should not be exercised by the judge for personal or partisan advantage and unnecessary appointments should not be made.

\* \* \*

"11. Personal Relationships.—A judge's official conduct should not create the impression that it is affected by the kinship, rank, position or influence of any party or person. A judge should not knowingly permit others to trade on the impression that they have special influence with him or her. A judge

The commission found that the aforesaid findings of fact demonstrated that petitioner had violated the Canons of Judicial Ethics Rule 48, Nos. 4, 10, 11, 15, 20, and 21.[2]

The Commission on Judicial Tenure and Discipline then recommended the following:

"1. That Mr. Justice Antonio S. Almeida (Retired) be removed from the Office of Associate Justice (Retired) of the Superior Court.

"2. That any pension granted to Mr. Justice Antonio S. Almeida (Retired), by statute or otherwise, be terminated retroactive to the date of his retirement and any pension payments made to said Justice be ordered repaid in full to the State of Rhode Island."

On April 6, 1992, this court issued an order with an opinion to follow terminating petitioner's pension rights and benefits as of that date.[3]

The petitioner does not contest the commission's authority to recommend that he

should not testify as a character witness unless the judge is convinced that his or her testimony is essential to a just result.

\* \* \*

"15. Ex Parte Communications.—A judge should not permit private interviews, arguments or communications designed to influence his or her judicial action, and ordinarily all communications of counsel to the judge should be made known to opposing counsel.

\* \* \*

"20. Inconsistent Obligations.—A judge should not accept inconsistent duties; nor incur obligations, pecuniary or otherwise, which will in any way interfere with the judge's devotion to the expeditious and proper administration of his or her official functions.

"21. Gifts and Favors.—(A) Neither a judge nor a member of the judge's family residing in the judge's household should accept a gift, bequest, favor or loan from litigants, or from lawyers or from others whose interests are likely to be submitted to the judge for judgment."

**3.** We need not address the disposition of the criminal charges that were pending against petitioner because our decision is based upon the acts of misconduct as alleged by the commission to which he has admitted.

be removed from his judicial position. The petitioner urges this court to deny any action being taken to terminate his pension rights and benefits, asserting that the commission does not possess the authority to recommend pension termination and that the court cannot then act on this improper recommendation. Further, petitioner asserts that this court cannot terminate his statutorily created pension rights through its inherent power to supervise the courts. Last, petitioner contends that establishing pension-benefit forfeiture as a remedy would violate article 1, section 8, of the Rhode Island Constitution by imposing a disproportionate penalty upon him.

The petitioner argues that the commission is not empowered to recommend the termination of a statutorily created pension. The petitioner, however, did not challenge the authority of the commission to recommend removal of petitioner from his judicial position. Section 8–16–4(e) specifically provides: "Upon completion of such hearings, the commission may dismiss the case on the ground of insufficiency of proof or may recommend to the supreme court the censure, suspension, immediate temporary suspension, reprimand, retirement or removal from office of the judge * * * under investigation." The petitioner contends that because the General Assembly did not expressly provide by statute for the termination of retirement benefits or pensions, the commission possesses only limited authority and may not make a recommendation with respect to petitioner's pension. The commission conversely asserts that this court may act on its recommendations and construe the legislative intent to effectuate most consistently that intent and the underlying policy considerations of the statutory scheme. We have stated previously that a statute must be applied according to the underlying policies and purposes and "may not be construed in a way that would attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of the enactment." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987). The stat-

utory scheme involving the commission provides for the power to investigate and issue subsequent remedial recommendations or to take action in response to complaints alleging judicial misconduct against judges. The commission explains, "[T]he basic policies and purposes of this enactment are to promote the very highest judicial integrity, performance and ethics."

▪ In order to ensure the integrity of the Judiciary, we find that there are sanctions and remedial actions available that may not be expressly stated as one of the enumerated categories of § 8–16–4. Mere exclusion of every possible potential sanction does not mean that the Legislature specifically intended to limit possible courses of action. Rather, certain remedies may be implicit within the general categories of § 8–16–4 and necessary for the orderly interpretation and implementation of the statute. The enumerated categories of possible recommendations are guideposts rather than strict limitations on the extent of sanctions the commission may recommend. We believe that within the recommendation of removal of a member of the Judiciary as a remedy is the implicit power to recommend those penalties incidental to a judge's removal. In the present case we find that incidental to removal of petitioner from his standing as an active retired justice is termination of his pension benefits.

▪ Some courts espouse the view that removal of the duties and obligations of the position includes removal and forfeiture of the rights and benefits accruing by virtue of the position, including retirement benefits. *See Hogan v. Bronner*, 491 So.2d 226, 227 (Ala.1986); *Ballurio v. Castellini*, 29 N.J.Super. 383, 390, 102 A.2d 662, 666 (1954). We find this statement of law to be appropriate and applicable in meeting the goals sought to be achieved by the Legislature in this jurisdiction. In the present case we find that removal of a retired justice carries with it the implication that his or her continued right to receive pen-

sion benefits should be considered. Therefore, the authority to recommend removal from office implicitly carries with it the authority to recommend remedial measures necessary to effectuate the statute, including, but not limited to, suspension of the removed retired justice's pension benefits. The commission's recommendations are, in fact, only recommendations that provide guidance and assistance to this court in its determination of the appropriate course of action. The commission acts, therefore, as a reference source for this court on the issue of removal of and imposition of penalties upon a member of the Judiciary. Pursuant to § 8–16–6(a), as amended by P.L. 1987, ch. 492, § 1, the Legislature expressly granted this court significant latitude with respect to considering the commission's recommendations, providing: "The supreme court may, upon review of a recommendation of censure, suspension, immediate temporary suspension, reprimand, retirement, or removal, affirm, modify, or reject such recommendation of the commission." This court is therefore not bound by those recommendations.

By analogy, in *Rhode Island Bar Association v. Automobile Service Association*, 55 R.I. 122, 179 A. 139 (1935), we held that the bar association's promulgation of the rules of professional conduct did not usurp the court's inherent power to maintain conduct rules but rather assisted and guided the court's jurisdiction and implementation of ethical-conduct standards. *Id.* at 127, 179 A. at 141. Similarly the commission is empowered to conduct investigations and issue findings and recommendations, but its findings and recommendations are in no way exhaustive or binding upon this court and therefore do not usurp the court's inherent power.

The applicable statutes clearly indicate that this court may exercise its independent judgment in determining an appropriate sanction, if any, resulting from a recommendation made by the commission. As one court explained: "It would be tantamount to an abdication of our constitution-

al and statutory obligations if we were to automatically adopt the commission's sanction recommendations." *In re Robson*, 500 P.2d 657, 660 (Alaska 1972).

■ The petitioner also asserts that this court is without authority to terminate his statutorily created pension because §§ 8–16–6 and 8–16–8 do not cloak this court with the authority to affirm, modify, or reject the commission's recommendation to terminate petitioner's statutorily created pension. As stated previously, we find the categories of recommendations the commission may make not to be exhaustive but merely to provide guidelines, and pension rights as benefits are incidental to and inclusive in removal of a retired judge from his position, if so warranted. This is clearly a remedy within our power to impose and one left open as a possible option, even though not explicitly mandated by statute. We find that although the statute appears to be clear and unambiguous, it contains general categories of remedial recommendations for which there exist subcategories that comprise the elements involved for each particular remedy.

■ Notwithstanding the court's power to accept, modify, or reject recommendations of the commission pursuant to § 8–16–6, this court possesses the general, plenary supervisory power over all courts of inferior jurisdiction, statutorily granted in § 8–1–2. This broadbased power includes the power to supervise, administrate, discipline, and serve the needs of the public in all facets of the courts. One court has explained that it possesses the authority to regulate the conduct of judges, to perform any function reasonably necessary to effectuate its jurisdiction, to improve the administration of justice, and to protect the Judiciary as a department. *Judicial Qualifications Commission v. Lowenstein*, 252 Ga. 432, 433–34, 314 S.E.2d 107, 108 (1984). Other courts have utilized their inherent power to act on instances of judicial misconduct, defining themselves as possessing the inherent power to regulate the conduct

of judges and discipline them for illegal and unethical acts. They are empowered to perform functions essential to the orderly operation of the court by promulgating and enforcing rules governing the Judiciary. *See In re Benoit,* 487 A.2d 1158, 1170–71 (Me.1985); *In re DeSaulnier,* 360 Mass. 757, 758–59, 274 N.E.2d 454, 456 (1971). Similarly, this court possesses the authority to exercise necessary means to regulate and control the practice of law by promulgating and enforcing rules to discipline attorneys. *Rhode Island Bar Association,* 55 R.I. at 130–31, 179 A. at 142–43. This court therefore exercises its plenary power to supervise the conduct of members of the bar, including judges. This authority is not so limited as to preclude this court from addressing the right of a removed retired judge to receive pension benefits after he has been removed from serving on the bench for admitted improper and blatant criminal activity.

Although it is with regret that we must address the proper discipline and sanction to impose upon petitioner, his criminal conduct has had a highly negative impact on the judicial system and has seriously compromised the integrity and interfered with the effectiveness of the court's business. As one state court has expressed: "It is our clear duty, however, to ensure that no judge attempts to put himself above the law. Judicial power has its limits. A judge who transcends those limits strikes at the vitality of the very constitution under which he holds his judicial office." *In re Benoit,* 487 A.2d at 1162. We find it necessary to perform this duty and to exercise our power to preserve the integrity and effectiveness of the court system.

 The petitioner contends that this court cannot exercise its authority to so encroach upon legislatively created rights. "Rights" is the operative word—a right is a benefit and a privilege owed to and deserved by an employee. The Legislature did not intend to bestow such pension rights permanently when there is conduct

of which it is unaware that would preclude the recipient from receiving these "rights" or benefits. The clear legislative intent is that a judge who has been suspended or removed from office is not able to demand continued salary payments. Section 8–16–8. This principle is likewise applicable to the remedy we may implement when there has been misconduct committed before pension benefits fully vest. As one court has stated, "Generally, disenfranchisement of pension rights is found in cases where the criminal conduct touches the administration of the public employee's office or position, or where the conduct involves moral turpitude." *Makwinski v. State,* 76 N.J. 87, 90, 385 A.2d 1227, 1229 (1978).

 This court possesses the constitutional power ultimately to interpret the law and to give effect to that interpretation in order best to serve the intentions of that statute. R.I. Const. art. 10, sec. 2. Although in interpreting a statute, this court cannot fashion an exception when none exists, terminating petitioner's pension benefits is not an exception to the statute but rather further interpretation of § 8–16–4. Statutes by and large do not encompass every potential factual situation that may arise. The present case exemplifies the necessity of judicial interpretation of statutes to be exercised by this court because it is so important and essential to the process of construing and enforcing applicable statutes. This court, acting as a final arbiter regarding questions of construction, is responsible for determining and effectuating that legislative intent and attributing to the enactment the most consistent meaning. *Brennan v. Kirby,* 529 A.2d at 637.

 Within the inherent power possessed by this court is the authority to implement those means necessary to administer justice, to protect the Judiciary, and to serve the public by restoring its trust in the Judiciary. The inherent supervisory power includes the ability to remove and discipline judges, to safeguard and re-

store public confidence in the Judiciary, and to deter petitioner and all others in public service from engaging in unethical, violative conduct, abusive of the very positions they hold. This power is derived not only from the legislative grant to the commission and to the court but also from the authority possessed by this court as the highest court in the state, empowered to supervise all inferior courts. This court is able to exercise its plenary jurisdiction by accepting, modifying, or rejecting the commission's recommendations. In fact, the statutory language stating that this court may "modify" the commission's recommendations clearly discloses the Legislature's acknowledgment of the court's power to formulate and impose an appropriate remedial sanction. In the present case we are therefore acting within the scope of our authority in fulfilling the role that it is our duty to exercise.

■ The petitioner asserts that because the Legislature has not conditioned pension rights and benefits on exemplary or honorable service, this court's addition of this service as a condition would encroach upon the Legislature's law-making power and as a result be violative of the principle of separation of powers, thereby subjecting statutes to uncertainty. The petitioner urges that an honorable service requirement would constitute an exception to the statute not intended by the Legislature. Because we consider honorable and faithful service to be implicitly required to receive a pension in all facets and positions of public service and in the pension statute for judges, it is therefore not a judicially formulated and imposed new exception to the statute. Rather, honorable service is implicit in all areas of public service and intended in the construction and application of retirement statutes and specifically § 8–3–8 in the present case.

A requirement of honorable service is commonsensical in relation to the trust and confidence vested in those persons holding positions in public service and most especially in the Judiciary. Many courts consider the concept of honorable and faithful service in pension statutes to be a condition of service so fundamental to those individuals to whom it pertains that it need not be expressly stated to be required. As one court has stated, "[P]ublic service, compensated at public expense, is a public trust and necessarily implies faithful service." *West Virginia Public Employees Retirement System v. Dodd*, 183 W. Va. 544, 549, 396 S.E.2d 725, 730, 396 S.E.2d 725, 730 (1990). It would be an extreme absurdity to suggest or propose that a judge's service may be dishonorable while allowing this service to accumulate toward his or her receiving pension benefits. In such a fashion, undetected unethical or even criminal conduct could occur repeatedly and at the public's expense, a hide-and-seek game of ethics played out among the Judiciary, the bar, and the public in waiting for the statutory-time requirement to be satisfied for benefits to be awarded. The statutory prerequisite of twenty years is not met merely by satisfying the numbered days but rather by serving twenty years of honorable service, with each day of that honorable service accruing to satisfy the statutory term. As one court has stated:

> "[A pension's] utility would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an *indefeasible* claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime." (Emphasis added.) *Ballurio*, 29 N.J. Super. at 389, 102 A.2d at 666.

■ When petitioner disagrees with the assumption that honorable service is required, he appears to be suggesting that honorable service is above and beyond that which is statutorily required of him in having served as a judge for twenty years. The petitioner's argument fails to take into

consideration that prior to his taking office, he was required to take the oath of office in accordance with § 8–3–1, as amended by P.L.1985, ch. 150, § 14:

"I _____ do solemnly swear (or affirm) that I will support the constitution of the United States and the constitution and laws of this state; that I will administer justice without respect to persons, and do equal right to the poor and to the rich; and that I will faithfully and impartially discharge and perform all the duties incumbent on me as _____ according to the best of my abilities, agreeable to law; so help me God."

This oath applies to a judge's tenure throughout his or her service. In 1987 the State Constitution declared its desire to enforce and stress the importance of ethical conduct:

"Ethical conduct.—The people of the State of Rhode Island believe that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior." R.I. Const., art. 3, sec. 7.

This court has stated:

"The bar is an important element of our judicial system and all of its members are obligated to govern their professional conduct in full accord with the solemn responsibility which that entails. Under our system of law the most effective guaranty of equal justice to all in the commonwealth is a competent and learned bar composed of men of high personal character who govern their professional conduct at all times by the well known and generally accepted canons of legal ethics." *Rhode Island Bar Association,* 55 R.I. at 139, 179 A. at 146.

Because petitioner has violated the oath of office and the constitutional requirements for public officials and employees, he has abused the very position that he held. He has not only violated the Canons of Judicial Ethics but also betrayed the public trust and confidence in his quest and pursuit of personal gain while acting in an egregious manner and abusing his judicial power.

In a New Jersey case a retired public employee's pension was suspended after he was indicted for offenses committed during his employment. *Mount v. Trustees of the Public Employees' Retirement System of New Jersey,* 133 N.J.Super. 72, 335 A.2d 559 (1975). The court in that case noted that although honorable service was not explicitly a condition precedent to granting a pension to a public employee, it was implicitly required. Regarding honorable service, that court stated that

"[t]o bestow [a pension] upon one 'whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency,' and 'burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed upon him.'" *Id.* at 81, 335 A.2d at 564.

In the present case it necessarily follows that removal of petitioner as a retired active justice should carry with it removal and termination of the honor and benefits of a judgeship, including those bestowing a pension upon him. The petitioner has forfeited the privileges associated with being a judge, including his right to the deferred compensation he would have received by pension. A pension is to be awarded for honorable service only; failure to meet this standard may result in its being removed. As one court has aptly stated, "[T]he pension roll is a roll of honor—a reward of merit, not a refuge from disgrace—and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who, on their merits, as distinguished from mere time of service, might be dismissed from [the position] for misbehavior." *People ex rel. Hardy v.*

*Greene,* 87 A.D. 589, 591, 84 N.Y.S. 673, 674 (1903). Because petitioner has failed to serve honorably during the twenty-year statutorily required term, he is therefore not eligible to receive a judicial pension under § 8–3–8. Notwithstanding petitioner's apparent eligibility, relying upon our right to disqualify petitioner from receiving a pension, we also remove any further pension rights he may have had.

■ Different viewpoints exist not only about the nature of pensions but also about the question of when rights to those pension benefits vest. Some courts have followed the theory that a pension is a gratuity of the state, "a bounty springing from the appreciation and graciousness of the sovereign; [and] an inducement to conscientious, efficient and honorable service." *Ballurio,* 29 N.J.Super. at 389, 102 A.2d at 666; *see Keegan v. Board of Trustees,* 412 Ill. 430, 434, 107 N.E.2d 702, 705 (1952); *City of Dallas v. Trammell,* 129 Tex. 150, 158, 101 S.W.2d 1009, 1013 (1937). One court has held that when the pension plan is compulsory and noncontributory, it is considered to be a gratuity and the employee has no vested rights until all application conditions are met. *Haverstock v. State Public Employees Retirement Fund,* 490 N.E.2d 357, 360 (Ind. Ct.App.1986). Although the pension plan in the present case is noncontributory, we decline to categorize it as a gratuity of the state.

Other courts categorize a pension as a contract, considering it to be part of the employment contract itself. *See Betts v. Board of Administration,* 21 Cal.3d 859, 863, 582 P.2d 614, 617, 148 Cal.Rptr. 158, 161 (1978); *Dorsey v. State ex rel. Mulrine,* 283 A.2d 834, 836 (Del.1971); *Board of Trustees of the Police Pension and Retirement System v. Weed,* 719 P.2d 1276, 1277 (Okla.1986); *Leonard v. City of Seattle,* 81 Wash.2d 479, 485–86, 503 P.2d 741, 746 (1972). According to this theory, the pension is completely vested once the employment contract is signed and employment begins. Pursuant to a contributory plan, the contractual obligations are formed when the conditions of employment are satisfied. *Weed,* 719 P.2d at 1278.

In the *Leonard* case the court considered pension benefits to continue vesting with each day of service, thereby amounting to an enforceable right to funds. *Leonard,* 81 Wash.2d at 487, 503 P.2d at 747. However, in that case the property right, the vested right to the pension was not acquired through the recipient's criminal activity in his position. The pension had vested earlier, and the conviction was not connected to his employment. *Id.* at 488, 503 P.2d at 747; *see also Weed,* 719 P.2d at 1278.

According to the contract theory, a pension has been referred to as deferred compensation. Property rights are in the nature of vested rights in deferred compensation from the employer. The right to this deferred compensation has been considered to vest when the employee completes the years of eligibility. *See Wright v. Allegheny County Retirement Board,* 390 Pa. 75, 79, 134 A.2d 231, 233 (1957). Contract rights may attach upon entering public employment and service. *Miller v. State,* 18 Cal.3d 808, 814, 557 P.2d 970, 973–74, 135 Cal.Rptr. 386, 389–90 (1977). A pension has also been considered " 'compensation for services previously rendered and [it acts] as an inducement to continued and faithful service.' " *Steinmann v. State Department of Treasury,* 116 N.J. 564, 572, 562 A.2d 791, 795 (1989). One court has held that long-term faithful service is an implied condition for receiving the benefit of deferred compensation. *Ameruso v. City of New York,* 141 Misc.2d 389, 393, 532 N.Y.S.2d 992, 995 (1988).

■ Certain courts utilize a middle-ground approach according to which a pension is considered more contractual than gratuitous, but also as deferred compensation. *City of Frederick v. Quinn,* 35 Md. App. 626, 629, 371 A.2d 724, 725–26 (1977); *Uricoli v. Board of Trustees, Police and Firemen's Retirement System,* 91 N.J. 62, 71–72, 449 A.2d 1267, 1272 (1982). Because

the right to a pension does not vest once the employment contract is signed, the pension therefore may be terminated for employee's misconduct. We similarly decline expressly to categorize a pension because such a limiting categorization might lead to an improper consequence. Instead we conclude that a pension comprises elements of both the deferred compensation and the contract theories. The right to deferred compensation vests upon meeting the terms of employment, but that vesting is subject to divestment because it is conditioned on continued honorable and faithful service. We need not distinguish between the contributory and the noncontributory natures of a public pension because vesting is continually subject to the implied condition of good behavior and honorable service in all areas of public service. These prerequisites must be satisfied to receive a pension and are quintessential for one employed in public service, especially as a judge. Vesting of the amount to be paid by the state in pension as deferred compensation is therefore subject to suspension, in a manner similar to the requirements for receiving compensation. This approach best serves the purpose sought to be achieved by the Legislature by not limiting our consideration of the vesting of pension benefits.

 Although pension rights are to vest once the requirements of the pension statute are met, such vesting is subject to divestment for actions committed during tenure in office, whether found out while in office or later, or later conduct, depending on its ramifications. As one court has stated:

> "It is never contemplated that an officer or employee guilty of conduct warranting dismissal should continue in office or be permitted to receive other emoluments offered as an inducement to honesty and efficiency. The right to a pension is not indefeasible, and an employee, though otherwise entitled thereto, may not be guilty of misconduct in his position and maintain his rights notwith-

standing such dereliction of duty." *MacIntyre v. Retirement Board of City & County of San Francisco,* 42 Cal.App. 2d 734, 735, 109 P.2d 962, 963 (1941).

In a recent case in Alabama, its supreme court found that when a retired judge was convicted of bribery committed when he was performing active duty, he was subject to removal from office. *Hogan v. Bronner,* 491 So.2d at 227. That court stated that "[t]he removal from office of such a judge so convicted carries with it the forfeiture of the benefits of that office, including retirement benefits." *Id.*

In the present case petitioner's rights did not vest indefeasibly, and any potential pension rights are also removed because of his judicial misconduct in committing criminal and unethical acts. *See In re Hunt,* 308 N.C. 328, 338, 302 S.E.2d 235, 240–41 (1983) (court found judge's misconduct warranted his removal from office and his disqualification from retirement benefits). Faithful and honorable service, implicitly required to receive deferred-compensation retirement benefits, does not prejudice the public interest or contradict public policy behind awarding these benefits. *See Ameruso,* 141 Misc.2d at 393, 532 N.Y.S.2d at 995. Although there is a need for the protection of retirement benefits, we find no applicable nonforfeiture statute or policy rationale mandating that these benefits vest.

The New Jersey court has adopted a middle-ground approach to determining the status of public pensions, not explicitly categorizing them but considering them to be more contractual than gratuitous. *Uricoli v. Board of Trustees, Police and Firemen's Retirement System,* 91 N.J. 62, 449 A.2d 1267 (1982). That court stated: "[S]ince public employment encompasses a public trust, there is a fiduciary relationship between the public and the employee. Implicit in this trust relationship is honorable service." *Id.* at 69–70, 449 A.2d at 1271. Although we consider pension benefits deferred compensation, designed to induce individuals to enter public service, we

find that there still implicitly exists the requirement that the potential recipient serve honorably and faithfully as a necessary condition precedent. This requirement must be satisfied before the pension benefits can withstand challenge. Honorable service is a continuing obligation, one so important and essential to the employment that pension benefits cannot vest indefeasibly upon merely winning the "headlong race" to the retirement date.

■ We do not intend to suggest that upon committing misconduct, one automatically forfeits pension benefits. Rather, we find that there exist varied factors and circumstances to consider in addressing the propriety of imposing this sanction. We decline to formulate an inflexible rule, considering such a limiting rule inconsistent with the intent of the Legislature and the goals sought to be attained in the Judiciary and in society.

■ The *Uricoli* court mandated that in determining whether termination and forfeiture of pension benefit rights is warranted, it would apply a "balancing approach," even when the misconduct is related to the performance of work-related duties. Those factors include

"(1) the employee's length of service;

"(2) the basis for retirement, i.e., age, service, disability, etc;

"(3) the extent to which the employee's pension has vested;

"(4) the duties of the particular employment;

"(5) the employee's public employment history and record;

"(6) the employee's other public employment and service;

"(7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;

"(8) the relationship between the misconduct and the employee's public duties;

"(9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like;

"(10) the availability and adequacy of other penal sanctions; and

"(11) other personal circumstances relating to the employee bearing upon the justness of forfeiture." *Uricoli*, 91 N.J. at 77–78, 449 A.2d at 1275–76.

The test set out in *Uricoli* embraces all relevant variables in determining if eligibility exists. That court stated that these are factors to be weighted, balanced, and considered in reaching "the major purposes underlying public pensions—to induce people to enter public employment and continue faithful and diligent employment and to furnish public employees with employment stability and financial security." *Id.* at 78, 449 A.2d at 1276. This approach exemplifies the rationale we espouse in ascertaining whether pension termination and forfeiture is the most appropriate remedial action to take.

■ Considering all the above-listed factors in light of the present case, we conclude that petitioner's judicial misconduct results in the forfeiture and termination of his pension benefits and rights. The petitioner served on the bench for twenty years prior to retirement and thereafter as an active retired judge. The retirement statute provided age and service requirements, with service to be performed honorably and faithfully throughout his holding the position. Therefore, in this case, petitioner's pension rights according to § 8–3–8 were not established or vested because petitioner failed to serve honorably for the requisite period. The qualities involved in serving as a judge include the highest degree of honesty, integrity, and morality, and a keen sense of ultimate right and wrong in order to serve the public properly in administering justice. The petitioner admittedly committed acts violative of these high ethical standards when serving as a justice of the Superior Court, abusing his position as a judge and betray-

ing the confidence of both the public and the profession by acting unethically in the interest of personal gain. The acts committed by petitioner were grave indeed and integrally intertwined with his judicial role. These offenses, abusive of his position, were not single or isolated but rather continued on a regular basis until a complaint was ultimately filed and certain facts were revealed. Although penal sanctions are available to punish petitioner for his actions, this availability does not affect our ability to terminate petitioner's right to a pension because one sanction does not operate as total retribution canceling out the possibility for the other. In balancing all these factors, we are aware of the severity of imposing the termination and forfeiture of petitioner's pension benefits, but in these circumstances we find this remedy just and warranted because the severity of his acts outweighs any meritorious services performed by him.

The petitioner contends that this approach burdens the employee with the uncertainty of the economic protection he is afforded and thereby creates a high degree of uncertainty in pension law, one best left to the Legislature. On the contrary, we believe that this approach best exemplifies the goals sought to be achieved by the Legislature and most appropriately presents just and equitable guidelines to determine whether a public employee's misconduct warrants forfeiture and termination of pension rights. Any alleged "uncertainty" is then created by the public employee through his or her own actions. The flexible approach of the *Uricoli* test broadly considers the totality of the circumstances instead of imposing a rigid application of a blanket rule. This court is able to exercise its power to suspend and ultimately to terminate a pension, depending upon the severity of the actions and the gravity of the harm caused by those actions. Although we clearly consider a judicial pension to be deferred compensation, we embrace the balancing test to determine the appropriate remedy and to consider the extent to which pension benefits have been vested.

Last, petitioner urges that pension forfeiture is a disproportionate remedy in violation of article 1, section 8, of the Rhode Island Constitution. We find that termination of petitioner's pension is not disproportionate in comparison to the offenses he admittedly committed. By his judicial misconduct, petitioner has breached the public trust by committing acts violative of his honored position as a respected jurist. His actions motivated by the desire for personal gain have operated to harm the public trust and confidence in the Judiciary as a whole and to affect adversely the honor and integrity of the very position he held and the capacity in which he served. Pension termination is therefore not a disproportionate response to the harm caused by his conduct that has been motivated by greed and the desire for personal gain.

In *West Virginia Public Employees Retirement System v. Dodd,* 183 W. Va. 544, 396 S.E.2d 725 (1990), a sheriff had committed misconduct that was discovered after he had retired from the position. The lower court found that the sheriff must forfeit his public pension because he had been less than honorable performing his duties. *Id.* at 546, 396 S.E.2d at 727. The sheriff suggested the pension be denied only for the time he had committed the felony. *Id.* at 548, 396 S.E.2d at 729. Because honorable service was statutorily required throughout the public service, that court found total forfeiture to be warranted because of his dishonorable service. The court concluded that although the forfeiture of the pension was penal in nature, a total forfeiture was not unconstitutionally disproportionate, especially when the triggering conduct was fundamentally violative of the public trust. *Id.* at 551, 396 S.E.2d at 732.

The legislative intent is clear that in accordance with § 8–16–8, an active judge who has been suspended is not to receive compensation during that time. A judge who is otherwise entitled to salary may not receive it when he has acted improperly and been charged with a crime. This ratio-

nale is clearly applicable to deferred-compensation retirement benefits. Compensation has been construed to include retirement benefits. *See Porter v. State Employees' Retirement Board,* 129 Pa. Commw. 290, 294–95, 565 A.2d 512, 514–15 (1989). In situations in which a judge was removed from office on the basis of misconduct, one Pennsylvania court found that he must be denied compensation, which compensation included retirement benefits. *Glancey v. State Employees' Retirement Board,* 126 Pa. Commw. 457, 462–63, 560 A.2d 263, 266 (1989). As our statute similarly prevents a suspended judge from receiving compensation, we find that this rationale supports our view that deferred compensation is to be encompassed within compensation and therefore does not propose a disproportionate penalty. As the *Glancey* court stated:

> "Public retirement benefits, again, are *deferred* compensation. Once a judge is removed and therefore has forfeited his office, no more services may be rendered and no more salary can be due. It necessarily follows that the [statutory] prohibition against paying 'compensation' to a removed judge must refer to deferred compensation, i.e. retirement benefits." *Id.*

At a time when ethical conduct has never been more crucial, public confidence in public officials is declining. Judges especially are to be held to a higher standard of conduct, thereby embodying ethics, integrity, and honesty. This court must attempt to correct the wrongs, to prevent future abuses, and to restore public trust and faith in a judicial system that prior to this time has remained unscathed for over three hundred years. In so doing, we must address petitioner's conduct in light of his position as a judge. A judge is to stand as the unbiased arbiter and the objective decision maker, making the ultimate determination of fairness and justice when executing the laws of this state and thereby serving the best interests of justice and the needs of the public. As John F. Kennedy once said of public servants:

> "For those to whom much is given, much is required. And when at some future date the high court of history sits in judgment on each of us, recording whether in our brief span of service we fulfilled our responsibilities to the state, our success or failure, in whatever office we hold, will be measured by four questions: First, were we truly men of courage? Second, were we truly men of judgment? Third, were we truly men of integrity? Finally, were we truly men of dedication?" John F. Kennedy, Speech to the Massachusetts State Legislature (Jan. 9, 1961).

These questions are especially applicable in evaluating the performance of a judge, because only the judge who exemplifies courage, judgment, integrity, and dedication merits a pension after serving the statutory term of public service.

The petitioner's acts, motivated by greed and the desire for personal gain at the expense of others, have warranted termination of any pension benefits for which he would otherwise be eligible. Because he failed to fulfill the requirement of twenty years of faithful service and acted in such an illegal and unethical manner, we hereby terminate all pension benefits he could otherwise possibly receive. We exercise our authority to remedy the situation in this manner and conclude that this penalty is not disproportionate to the crime but instead operates publicly to recognize and condemn such serious judicial misconduct and abuse of power.

For the aforementioned reasons, we deny the petitioner's request that we reject the recommendations of the commission regarding removal of his pension benefits. Through our own inherent authority we remove the petitioner from office, at the same time taking away the accompanying title and benefits of that office, and hereby terminate the petitioner's pension benefits as of April 6, 1992. The petitioner's motion is therefore denied and dismissed.

MURRAY, J., concurs in part and dissents in part, reaffirming her conviction

that the full recommendation of the commission should be followed.